IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THEODORE ROOSEVELT ) <br> CONSERVATION PARTNERSHIP, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DIRK KEMPTHORNE, in his official ) <br> capacity as the Secretary of the United States ) <br> Department of the Interior, and UNITED STATES ) <br> BUREAU OF LAND MANAGEMENT, ) <br> ) <br> Defendants. ) <br> _____ ) <br> ANADARKO PETROLEUM CORPORATION, ) <br> WARREN RESOURCES, INC., and DOUBLE ) <br> EAGLE PETROLEUM CO., ) <br> and ) <br> STATE OF WYOMING, ) <br> ) <br> Defendant-Intervenors. ) <br> _____ ) | CASE NO. 1:07-cv-1486-RJL |

**INDUSTRY DEFENDANT-INTERVENORS REPLY IN SUPPORT OF THEIR MOTION TO CONSOLIDATE AND IN RESPONSE TO PLAINTIFF TRCP'S OPPOSITION**

Plaintiff Theodore Roosevelt Conservation Partnership's ("TRCP's") opposition to consolidation identifies no reason for this Court not to exercise its broad discretion to consolidate the above-captioned case, *Theodore Roosevelt Conservation Partnership v. Kempthorne, et al.*, No. 1:07-cv-1486-RJL ("TRCP case"), with *Natural Resources Defense Council, et al. v. Kempthorne, et al.*, No. 1:07-cv-1709-RJL ("NRDC case"). As TRCP admits, these two cases have common issues of law and fact. Contrary to TRCP's characterization, however, these common issues are pervasive. Both cases challenge the same underlying BLM decision— embodied in the Environmental Impact Statement ("EIS") and Record of Decision ("ROD")— for the overall Atlantic Rim Project Area. Moreover, this Court's consideration of claims in the

NRDC case relating to specific sites within the Atlantic Rim Project Area is dependent on its review of the EIS and ROD. Thus, consolidation will serve judicial economy, saving judicial and parties' resources. These savings outweigh any speculative allegations of delay of the TRCP case. Further, TRCP overstates any potential for confusion because these cases are not before a jury, involve purely federal law claims, and depend largely on the same administrative record.

## I.     Overwhelming Common Issues of Law and Fact Support Consolidation.

As TRCP recognizes, Federal Rule of Civil Procedure 42(a) provides this Court with broad discretion to consolidate cases. TRCP Opp'n at 3. Rule 42(a) allows consolidation of "actions involving a common question of law or fact."[1]  Fed. R. Civ. P. 42(a).

TRCP acknowledges that its case and the NRDC case involve common questions of law and fact, and admits that both cases "involve challenges to the same underlying decision document"—the EIS and its related ROD. TRCP Opp'n at 4 n.2; *see also id.* at 2-3, ¶¶1, 5. TRCP attempts to minimize this commonality by asserting that NRDC only "nominally" challenges the EIS, and that individual well plans of development ("PODs") within the Atlantic Rim Project Area are the sole focus of NRDC's original complaint and the predominant focus of NRDC's amended complaint. TRCP Opp'n at 2, 4. Although some of NRDC's claims are couched in terms of challenges to individual PODs within the Atlantic Rim Project Area, this does not make the EIS any less central to NRDC's case. Because the environmental assessments ("EAs") prepared for the individual PODs were tiered to the overall project EIS, the EAs (and their accompanying decision documents) require consideration together with the EIS, and cannot

---

[1]  This Court may order consolidation *sua sponte*. *See, e.g., Blasko v. Wash. Metro. Area Transit Auth.*, 243 F.R.D. 13, 15 (D.D.C. 2007) (citing *In re Pepco Employment Litig.*, No. 86-0603(RCL), 1990 WL 236073, at *1 (D.D.C. Dec. 20, 1990)) (other citations omitted).

be considered in isolation.  Thus, in this case, the EAs are not independent documents for purposes of judicial review as TRCP asserts.

TRCP admits that there are common issues of law.  TRCP acknowledges that its Counts Six and Seven and NRDC's Fourth Cause of Action are identical, as they both allege the same violation of the Federal Land Policy and Management Act's ("FLPMA's") "requirement of consistency with the applicable Resource Management Plan."  TRCP Opp'n at 6.  TRCP also does not dispute that both it and NRDC allege that BLM failed to adequately consider cumulative impacts under NEPA.

Recognizing these common claims, TRCP then attempts to distinguish its Complaint by noting it has raised additional allegations not raised by NRDC.  However, as outlined in Defendant-Intervenors' Motion to Consolidate (and in Federal Defendants' Notice of Related Case), four out of five of NRDC's claims will be addressed, in whole or in part, in the TRCP case.  TRCP makes no allegation that the additional remaining claims will predominate this case or will require substantially different factual evidence, nor can it.  TRCP's additional claims are straightforward legal issues and involve the same resource management plan, the same project area, and the same underlying BLM decision at issue in NRDC's case.  Moreover, both TRCP and NRDC ask for the same injunctive relief.[2]

In addition, Judge Huvelle has already found that both cases "clearly involve common issues of law under NEPA."  Order, *Natural Res. Def. Council v. Kempthorne*, No. 1:07-cv-1709, at 2 (D.D.C. Sept. 28, 2007) ("Related Case Order") (attached as Exhibit 1 to TRCP Docket No. 13).  In attempting to distinguish its NEPA claims from NRDC's, TRCP ignores the fact that NEPA is not a substantive statute, but is procedural.  *See S. Utah Wilderness Alliance v. Norton*,

---

[2]  Although TRCP has declined to seek preliminary injunctive relief, both TRCP and NRDC seek the same permanent injunctive relief.  TRCP Compl. at 35; NRDC Am. Compl. at 25.

237 F. Supp. 2d 48, 52 (D.D.C. 2002) (quoting *N. Slope Borough v. Andrus*, 642 F.2d 589, 599 (D.C. Cir. 1980)). The Court should only be required to undertake one review to determine whether BLM complied with NEPA's procedural requirements when authorizing the Atlantic Rim Project. For example, TRCP asserts that its claim that BLM's failure to consider reasonable alternatives is different from NRDC's because TRCP alleges a different alternative that BLM should have considered. Regardless, the Court should only have to determine *once* whether the range of alternatives considered by BLM was reasonable and complied with NEPA.[3] As another example, both NRDC and TRCP take issue with BLM's consideration of mitigation measures, although NRDC focuses on mitigation measures for the sage grouse and TRCP focuses on BLM's adaptive management plan. NRDC Am. Compl. ¶ 97; TRCP Compl. ¶¶ 67-69. Again, this Court should only be required to consider whether BLM met this requirement of NEPA once, not in piecemeal fashion.[4] Thus, while some of the legal theories may not be identical, the claims largely overlap and require consideration of the same actions by BLM and the same evidence in support of those actions.

As noted in Defendant-Intervenors' Motion for Consolidation, Judge Huvelle has already found that the TRCP and NRDC cases involve "common issues of law … and issues of fact" under D.C. Local Rule 40.5, because they both involve challenges under NEPA related to BLM's EIS for the Atlantic Rim Project Area. Related Case Order at 2-3.[5] In its Opposition, TRCP

---

[3] BLM is not required to consider every possible alternative. "An agency is required to examine only those alternatives necessary to permit a reasoned choice." *Morongo Band of Mission Indians v. FAA*, 161 F.3d 569, 576 (9th Cir. 1998) (citation omitted).

[4] NEPA only requires that mitigation be discussed in sufficient detail to ensure environmental consequences have been considered. *Wright v. Inman*, 923 F. Supp. 1295, 1304 (D. Nev. 1996); *see also Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 353 (1989).

[5] Judge Huvelle also found that both cases involve the same property under D.C. Rule 40.5. Related Case Order at 2-3.

4

attempts to dismiss Judge Huvelle's finding, claiming that such finding regarding "relatedness" of the cases "does not implicate the factors that must be considered when determining whether consolidation is appropriate." TRCP Opp'n at 3 n.1. This argument is patently specious. Judge Huvelle considered whether there were common questions of law or fact, as provided in Rule 42(a).[6] Related Case Order at 2-3. She also considered the effects of transfer on judicial economy, finding that consideration of additional legal claims does not make transfer "any less judicially efficient." *Id.* at 3. These considerations track those applicable to a motion for consolidation. TRCP Opp'n at 3-4.

The only case relied on by TRCP in its request that this Court disregard Judge Huvelle's reasoned decision is inapposite. That case, *Natural Res. Def. Council v. Norton*, No. 05-1207, 2007 WL 14283, at *16 (E.D. Cal. Jan. 3, 2007), involved transfer from one district to another district under 28 U.S.C. § 1404(a), not consolidation under Federal Rule 42(a). *See* Order Granting Motion to Transfer Venue, *Pac. Coast Fed'n v. Gutierrez*, No. 05-3232, at 3-5 (N.D. Cal. filed Jan. 24, 2006) (attached). Transfer under 28 U.S.C. § 1404 may involve different considerations than consolidation under Rule 42(a) and "relatedness" under D.C. Rule 40.5. *See, e.g., Biochem Pharma, Inc. v. Emory Univ.*, 148 F. Supp. 2d 11, 13-14 (D.D.C. 2001) (granting motion to consolidate under Rule 42(a) "where, as here, the two cases each involve review of the same underlying decision" and granting motion to transfer pursuant to 28 U.S.C. § 1404(a) to Northern District of Georgia as "the forum where the consolidated cases in this district can be

---

[6] The Federal Defendants in their notice of related case outlined the common issues of fact and law between both cases, noting that both cases "grow out of the same event or transaction, because they both challenge the adequacy of BLM's analysis in the Atlantic Rim Development EIS." TRCP Docket No. 6 at 3. TRCP did not file any objections to this notice.

5

tried most conveniently"). Thus, Judge Huvelle's decision is relevant, and TRCP provides no reason why this Court should deviate from her findings.[7]

The cases cited by TRCP to argue that consolidation is not warranted despite these common issues of law and fact are inapposite, as those cases do not involve common evidence, as is the case here. For example, in *Natural Resources Defense Council v. Norton*, No. 05-1207, 2007 WL 14283 (E.D. Cal. Jan. 3, 2007), the two actions at issue challenged two separate biological opinions issued by different federal agencies and, thus, involved "two independent sets of scientific facts, not to mention separate administrative records." *Id.* at *17. Here, on the other hand, the same BLM office issued the ROD, the EIS, and the EAs, and the administrative record for the TRCP case will be subsumed by the administrative record for NRDC's case. Thus, the common evidence that will be relied on in both cases is overwhelming.

Similarly, in *ONDA v. Shurford*, No. 06-242, 2006 WL 2601073, at *10-12 (D. Or. Sept, 8, 2006), the movant sought to consolidate challenges to two different resource management plans, for two different resource areas, involving two different (and independently voluminous) administrative records, and raising claims under different statutes unique to the two different areas at issue. Moreover, the movant seeking consolidation acknowledged that the underlying facts in both cases were different. *Id.* at *10. The court found that the consolidation under the Local Rules of that court "depend[s] in large part on the extent to which the evidence in the cases is common." *Id.* at *11 (quoting The Manual for Complex Litigation § 21.631). The court determined the NEPA and FLPMA claims for the two different areas were "highly fact

---

[7] Due to their interconnectedness, Judge Huvelle appropriately found common issues of fact between the two cases based on NRDC's original complaint, which TRCP claims was solely focused on the EAs. NRDC's Amended Complaint makes even more clear that these two cases address the same underlying decision and raise substantial, not "nominal," common facts that support consolidation.

6

dependent and will turn on specific facts contained in different Administrative Records." *Id.* at *12. Unlike that case, the evidence required for TRCP's and NRDC's NEPA and FLPMA claims are common. As noted above, the administrative record for TRCP's case is subsumed by the record in the NRDC case.

Finally, in *Sidari v. Orleans County*, 174 F.R.D. 275, 281-82 (W.D.N.Y. 1996), the movant sought consolidation of two cases involving discrimination claims brought by different plaintiffs. One of the cases asserted religious/ethnic discrimination, while the other asserted gender discrimination, and so involved different legal standards and were "dependent upon the specific factual circumstances alleged in each case." *Id.* at 281. The two cases also involved different defendants, and the court found that the plaintiffs sought to use the other case to bolster their own discrimination claims (i.e., "guilt by association") which would have resulted in prejudice to the defendants. *Id.* at 282. There is no such danger in this case.

Unlike the cases relied on by TRCP, the two cases here involve significant common issues of both law and fact and warrant consolidation. TRCP asks the Court to ignore these common issues by claiming that commonality should yield to considerations of convenience and economy. The cases cited by TRCP in support of its position that the common issues do not justify consolidation, however, are easily distinguishable. *Compare In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993) (denying consolidation of 44 cases from a variety of jurisdictions asserting claims for damages for repetitive stress injuries from manufacturers of various equipment because "[a]t this stage of the litigation, the sole common fact among these cases is a claim of injury of such generality that it covers a number of different ailments for each of which there are numerous possible causes other than the tortious conduct of one of the defendants"), *with Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990) (upholding

7

district court's consolidation of two asbestos personal injury claims that involved the same work site and similar exposures). In fact, the cases cited by TRCP demonstrate that consolidation is appropriate when there is an overlap of factual issues, as in this case.

## II. Consolidation Will Not Prejudice Any Party or Delay These Proceedings, But Will Serve Judicial Economy.

Contrary to TRCP's claims, there is no indication that consolidation of this case with NRDC's will unduly delay these proceedings or prejudice any of the parties. First, TRCP makes only speculative assertions in arguing that consolidation will delay the TRCP proceedings. Contrary to TRCP's contentions, Defendant-Intervenors' motion was not filed to delay litigation, but was filed so that Defendant-Intervenors will not have to litigate the same issues twice. Consolidation would eliminate duplicative pleadings and orders. Such consolidation need not delay the proceedings, but would conserve the parties' and judicial resources.[8] Moreover, claims by TRCP that any delay benefits Defendant-Intervenors at the expense of TRCP is irrelevant to the motion for consolidation, and rings hollow given that TRCP has declined to seek a preliminary injunction in this case. Both cases are in the early stages of litigation and similar procedural postures, because the Court has not yet issued a briefing schedule in either case. Briefing under TRCP's proposed schedule would not start until February of 2008 (and then only if there are no unresolved disputes over the administrative record).[9] TRCP Docket No. 16 at 2-3.

---

[8] As just one example of how consolidation could conserve resources, because Plaintiffs and Defendants in the TRCP case are filing oppositions to the motion to consolidate on different dates (TRCP declined the offer to extend the response date), Defendant-Intervenors must file, and the Court must now read, three separate replies to the oppositions to consolidate these cases.

[9] In any event, this Court has recognized, in a case cited by TRCP, that cases being in different procedural stages does not preclude consolidation. *See Blasko*, 243 F.R.D. at 16. *Cf. Natural Res. Def. Council*, 2007 WL 14283, at *17 (declining to consolidate based on totality of circumstances, including fact that cases "are at significantly different stages of development" where one case completed summary judgment briefing and was ready for a merits-type trial);

This is almost six months from the time the Complaint was filed.  There is no indication that consolidation would result in any additional delay or, given TRCP's decision not to seek a stay, that such delay would prejudice the parties.

Second, TRCP's claims that NRDC's motion for preliminary injunction will delay these proceedings are speculative.  TRCP speculates that this Court's November 30, 2007, decision denying the motion "may" result in one or more appeals, "sidetracking the instant litigation indefinitely."  TRCP Opp'n at 7.  TRCP, however, assumes that the parties to the NRDC case will appeal this Court's decision, which is not assured and cannot be assumed at this point.  Moreover, there is no automatic stay of the proceedings pending any such appeal.  Although a party may request a stay pending appeal under Federal Rule of Civil Procedure 62(c), grant of such a stay is far from certain.

Finally, TRCP cites to no prejudice that would be suffered by any of the parties by consolidation.  Without support, TRCP asserts that consolidation of briefing of issues related to the ROD, EIS and EAs would result in "unavoidable" confusion.  TRCP Opp'n at 7.  However, the Court can easily discern the site-specific facts applicable to NRDC's claims.[10]  The possibility that the Court may need to consider additional facts in one case does not outweigh the fact that the administrative records will largely be the same, because the EIS is relevant to NRDC's claims.  This is not a case, like the case relied on by TRCP, where "the jury is likely to be confused by the numerous and complex differences relating to the legal claims and damages

---

*Stewart v. O'Neill*, 225 F. Supp. 2d 16, 21 (D.D.C. 2002) (declining to consolidate where "cases are in vastly different procedural postures" as one case settled and was no longer pending).

[10] There are not seven Decision Notices and supporting EA/FONSIs as noted by TRCP, but seven PODs that have been approved by BLM in four decision documents.  These PODs are all in the same general area within the Atlantic Rim Project Area.  TRCP has not identified any specific facts that are unique to this Court's consideration of the EAs that could lead to confusion.

9

of each [plaintiff]." *Blasko*, 243 F.R.D. at 16-17 (although consolidating discovery, denying request to consolidate trials, without prejudice, due to potential that plaintiffs' damages claims "may require distinct evidentiary support").

TRCP asserts that "confusion of the issues will be unavoidable" if the Court was required to consider the EIS and the separate EAs at the same time, but ignores that the Court must undertake this analysis in NRDC's case. Moreover, TRCP's apparent solution is to recommend a "common schedule," which would still require consideration of these claims at the same time, just in separate cases with separate (and no doubt duplicative) papers. TRCP Opp'n at 8. Thus, TRCP implicitly admits that any alleged confusion can be managed and would not prejudice the Plaintiffs. On the other hand, Defendant-Intervenors will be prejudiced if the cases are not consolidated by having to defend two separate cases that involve substantial common issues of law and fact.[11]

---

[11] To the extent this Court deems appropriate, TRCP and NRDC may seek to file two separate briefs in the consolidated case. Consolidation still would allow Defendants and Defendant-Intervenors to respond to both in one set of papers, reducing the burdens on the parties and on this Court. If the Court deems separate briefing by Plaintiffs to be appropriate here, it is likely Defendants and Defendant-Intervenors would seek, and to be consistent the Court should allow, additional pages and time to respond to the two sets of Plaintiffs' briefs.

**III.     Conclusion**

For the foregoing reasons and for the reasons outlined in Defendant-Intervenors' Motion to Consolidate, this Court should exercise its broad discretion and grant this motion to consolidate.

Respectfully submitted,

/s/ Michael B. Wigmore

Michael B. Wigmore (DC Bar # 436114)
Sandra P. Franco (DC Bar # 467091)
Bingham McCutchen LLP
2020 K St., NW
Washington, DC 20006-1806
202.373.6000
202.373.6001 (facsimile)
michael.wigmore@bingham.com
s.franco@bingham.com

*Counsel for Anadarko Petroleum Corporation, Warren Resources, Inc., and Double Eagle Petroleum Co.*

Robert C. Mathes (DC Bar # 484255)
Bjork Lindley Little PC
1600 Stout Street, Suite 1400
Denver, CO 80202
303.892.1400
303.892.1401 (facsimile)
rmathes@bjorklindley.com

*Counsel for Double Eagle Petroleum Co.*

Dated:  December 6, 2007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of December, 2007, I caused to be filed Industry Defendant-Intervenors' Reply In Support Of Their Motion To Consolidate And In Response To Plaintiff TRCP's Opposition electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

>Steven Michael Kupka
>BLACKWELL SANDERS LLP
>206 South 13th Street
>Suite 1400
>Lincoln, NE 68508-2019
>(402) 458-1500
>(402) 458-1510 (fax)
>nholland@blackwellsanders.com
>*Attorney for Theodore Roosevelt Conservation Partnership*
>
>Lori Caramanian
>U.S. DEPARTMENT OF JUSTICE
>1961 Stout St.
>8th Floor
>Denver, CO 80294
>(303) 312-7393
>Fax: (303) 844-1499
>Email: lori.caramanian@usdoj.gov
>*Attorney for Defendants*
>
>Kristen A. Dolan
>WYOMING ATTORNEY GENERAL'S OFFICE
>123 Capitol Avenue
>Cheyenne, WY 82002
>(307) 777-6946
>kdolan@state.wy.us
>*Counsel for Defendant-Intervenor State of Wyoming*

>>/s/ Michael B. Wigmore
>>Michael B. Wigmore

A/72337044.2

**ATTACHMENT**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC COAST FEDERATION, ET AL.,<br><br>Plaintiff(s),<br><br>v.<br><br>CARLOS M. GUTIERREZ, ET AL.,<br><br>Defendant(s).<br><br>and<br><br>CALIFORNIA FARM BUREAU FEDERATION, SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, AND WESTLANDS WATER DISTRICT,<br><br>Intervenor Defendant(s). | Case No. C-05-3232 JCS<br><br>**ORDER GRANTING MOTION TO TRANSFER VENUE [Docket No. 60]**<br><br>7:  06 CV 00 2 4 5 AWI LJO |

## I. INTRODUCTION

On Friday, January 20, 2006, Federal Defendants' Motion to Transfer Venue (the "Motion"), in which Defendant-Intervenors have joined, came on for hearing. Another judge of this court has previously transferred a companion action, *Natural Resources Defense Counsel, et al. v. Norton, et al.* ("*NRDC v. Norton*"), Case No. C-05-0690 CW, to Judge Wanger of the Eastern District. These two cases have (1) overlapping facts and legal issues and (2) arise out of the same agency action. In light of the danger of inconsistent relief, these two cases should be decided by the same court. Accordingly, the Motion is GRANTED.

## II. BACKGROUND

This action was filed on August 9, 2005. In it, Plaintiffs challenge the legality of a biological opinion issued by the National Marine Fisheries Service ("NFMS") in connection with the "Long-Term Central Valley Project Operations Criteria and Plan" ("2004 OCAP"), issued by the United

ECF DOCUMENT
I hereby attest and certify this is a printed copy of a document which was electronically filed with the United States District Court for the Northern District of California.
Date Filed: 1/24/06
RICHARD W. WIEKING, Clerk
By: GINA AGUSTINE-RIVAS, Deputy Clerk

1  States Bureau of Reclamation. The 2004 OCAP sets forth a joint operating plan for the federal
2  Central Valley Project ("CVP") and the State Water Project ("SWP") operated by the Bureau of
3  Reclamation. On the same day that Plaintiffs filed the complaint in this action, they also filed a
4  motion to relate the case to an earlier filed action then pending before Judge Wilken, *NRDC v.*
5  *Norton*. In that action, Plaintiffs challenged the legality of another biological opinion, issued by the
6  United States Fish and Wildlife Service ("FWS"), also in connection with the 2004 OCAP.

7  In their Administrative Motion to Consider Whether Cases Should be Related (the "Motion
8  to Relate"), filed on August 9, 2005, Plaintiffs described the relationship between the two actions:

> The new action and *NRDC v. Norton* share many of the same factual and legal issues such that their assignment to a single judge would avoid significant duplication of labor and expense. Both cases involve the same water projects, the same operating plan and the same changes in future operations. Specifically, both involve the substantial changes to CVP and SWP operations set forth in the 2004 OCAP, and both represent an attempt by environmental and fishing groups to ensure that the impacts of these operational changes on federally listed fish species are adequately considered before these changes are further implemented. Both cases will require the court to familiarize itself with the 2004 OCAP. not only in terms of changed operations proposed therein, but in terms of the environmental (and especially fishery) impacts of those changed operations, such as elevated water temperatures and habitat degradation.
>
> Both cases also share common legal questions. For example, both cases will require the court to address whether NMFS and FWS complied with the identical [Endangered Species Act] Section 7 requirements that govern the preparation of biological opinions. In doing so, each court will have to consider such questions as whether the "no jeopardy" conclusion in each case is reasonable in light of the 2004 OCAP's significant intensification of CVP and SWP operations, and whether the "adaptive management" scheme and other future mitigation measures proposed in association with the 2004 OCAP are sufficient to justify a "no jeopardy" opinion despite the likely impacts to the affected species of the changed and intensified operations. Finally, the new action and *NRDC v. Norton* raise similar questions regarding the appropriate remedy for the federal defendants' failure to prepare adequate biological opinions; therefore the potential exists for conflicting remedies in the event the cases are not assigned to the same judge.

25  Motion to Relate at 4-5.
26  Before Judge Wilken ruled on the Motion to Relate, Defendant-Intervenors in *NRDC v.*
27  *Norton* brought a motion to transfer that action to the Eastern District of California on the basis that
28  it was similar to an action pending in the Eastern District, *San Luis & Delta-Mendota Water Auth.*

*and Westlands Water Dist. v. United States Dep't of the Interior, et al.*, Case No. CIV F-02-6461 OWW/DLB (hereinafter, "*San Luis*"). Judge Wilken denied the motion to relate and granted the motion to transfer *NRDC v. Norton* to the Eastern District.

Defendants and Defendant-Intervenors (collectively, the "Moving Parties") now seek transfer of this action to the Eastern District pursuant to 28 U.S.C. § 1404(a) on the basis that such a transfer is in the interest of justice because of the substantial similarities between this action and *NRDC v. Norton* and the greater judicial efficiency that will result from resolving these cases in the same court. Plaintiffs counter that a transfer should not be granted because their choice of forum should be given deference and because a transfer will give rise to significant inconvenience to many of the key individuals of the Plaintiff organizations. Plaintiffs reject the assertion that the similarities between this action and *NRDC v. Norton* support transfer, pointing out that the actions involve two different biological opinions issued by two different agencies. They also assert that transfer is not in the interest of justice because it would result in delay, given the greater court congestion in the Eastern District.[1]

### III. ANALYSIS

Pursuant to 28 U.S.C. § 1404(a), a case may be transferred "for the convenience of the parties of the parties and witnesses, in the interest of justice" to "any other district or division where the action might have been brought."[2] In *Continental Grain Co. v. Barge F.B.L. - 585*, the Supreme

---

[1] In support of this point, Plaintiffs request judicial notice of statements by both Judge Wilken, of this district, and Judge Wanger, of the Eastern District, that the Eastern District of California is one of the busiest districts in the country. *See* Plaintiffs' Request that the Court Take Judicial Notice of Adjudicative Facts in Connection with Plaintiffs' Opposition to Federal Defendants' Motion to Transfer Venue ("First Request for Judicial Notice") (requesting Court take judicial notice of transcript of November 18, 2005, proceeding before Judge Wilken in which Judge Wilken stated that "the Eastern District of California has a huge caseload, much greater than ours"); Plaintiffs' Second Request that the Court Take Judicial Notice of Adjudicative Facts in Connection with Plaintiffs' Opposition to Federal Defendants' Motion to Transfer Venue ("Second Request for Judicial Notice") (requesting Court take judicial notice of transcript in proceeding before Judge Wanger in unrelated action in which Judge Wanger stated that "this is the busiest court in the United States . . . We have over 1,150 cases per judge in this court"). The Court grants Plaintiffs' request for judicial notice of these transcripts pursuant to Fed. R. Evid. 201(d), which allows courts to take judicial notice of facts not reasonably subject to dispute.

[2] The parties do not dispute that the action could have been brought in the Eastern District of California.

3

1  Court held that "[t]o permit a situation in which two cases involving precisely the same issues are
2  simultaneously pending in different district courts leads to the wastefulness of time, energy and
3  money that § 1404(a) was designed to prevent." 364 U.S. 19, 26 (1960). In reliance on *Continental*
4  *Grain*, courts have held that "the pendency of a similar action in the transferee court is a universally
5  recognized reason for granting a change of venue." *Weltmann v. Fletcher*, 431 F. Supp. 448, 451
6  (N.D. Ohio 1976) (citing *Continental Grain*, 364 U.S. at 26). For example, Judge Armstrong, of this
7  court, has explained that "the pendency of related actions in the proposed transferee forum is a
8  highly persuasive factor" in determining whether a transfer is in the interest of justice. *Wiley v.*
9  *Trendwest Resorts, Inc.*, 2005 WL 1910934 (N.D. Cal.) at *3. Further, "[t]he 'interests of justice'
10 consideration is the most important factor a court must consider, and may be decisive in a transfer
11 motion even when all other factors point the other way." *Id.* (quoting *London and Hull Maritime*
12 *Ins. Co. v. Eagle Pacific Ins. Co.*, 1996 WL 479013, * 3 (N.D. Cal. 1996)).

      Other factors considered by courts in determining whether a case should be transferred under § 1404(a) are: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 .3d 495, 498-499 (9th Cir. 2000). However, in environmental cases involving challenges to an administrative record, many of these factors are not applicable, in part because there is no evidentiary hearing or presentation of witnesses. *See Nez Perce Tribe v. Nat'l Oceanic and Atmospheric Admin. Fisheries*, 2004 WL 1179333 at * 2 (D. Or. May 27, 2004). In these cases, one of the most important considerations often is the local interest in having localized controversies decided at home. *Id.* A party seeking transfer must make "a strong showing . . . to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

      Based on consideration of the factors listed above, the Court concludes that transfer is warranted. It is indisputable – and indeed, undisputed by the parties – that there is significant

overlap between the two cases such that trying them together will result in greater judicial efficiency. Further, the Court concludes that there is a danger of inconsistent outcomes if the cases are handled by different courts. The Court is particularly troubled by the possibility that if this case and *NRDC v. Norton* are handled by different courts, the potential remedies fashioned by the two courts are likely to be piecemeal. Given that the 2004 OCAP is intended to be a unified plan, it is in the interest of justice that any relief that may be granted in one or both cases should be fashioned by a single judge who has the ability to appreciate its broad implications. Judge Wilken has found good cause to transfer *NRDC v. Norton* to the Eastern District. This case should be heard in the same court.

The Court does not find that the potential inconvenience to Plaintiffs of transferring the case to the Eastern District is significant enough to outweigh the concerns discussed above. As Judge Wilken has noted, most of the plaintiffs are regional, state-wide or national organizations. *See* Order Granting Motion to Transfer (Case No. C-05-0690 CW), filed 9/6/05. Many litigate in the Eastern District frequently. Nor does the possibility that there will be some delay in resolution of the case (Plaintiffs assert that cases in the Eastern District take on average a month longer to resolve than cases in this district, and the Court assumes this statistic to be accurate) persuade the Court the case should not be transferred. While this Court is reluctant to contribute to the already heavy case load of the Eastern District, it concludes that this is just the sort of case that § 1404(a) was designed to address. The "interest of justice" strongly outweighs any inconvenience to Plaintiffs that will result from transferring the case.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED. The Clerk is instructed to transfer the file in this case to the Eastern District of California, Fresno Division.

IT IS SO ORDERED.

Dated: January 24, 2006

JOSEPH C. SPERO
United States Magistrate Judge