IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THEODORE ROOSEVELT | ) | |
| CONSERVATION PARTNERSHIP | ) | |
| 555 Eleventh St. N.W., 6th Floor | ) | |
| Washington, DC 20004, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-cv-01486-RJL |
| | ) | |
| DIRK KEMPTHORNE, in his official | ) | |
| capacity as the Secretary of the United States | ) | |
| Department of the Interior | ) | |
| 1849 C Street, N.W. | ) | |
| Washington, DC 20240, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES BUREAU OF LAND | ) | |
| MANAGEMENT | ) | |
| 1849 C Street, N.W., Room 406-LS | ) | |
| Washington, DC 20240, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ANADARKO PETROLEUM CORPORATION, | ) | |
| P.O. Box 1330 | ) | |
| Houston, TX 77251-1330, | ) | |
| | ) | |
| WARREN RESOURCES, INC., | ) | |
| 489 Fifth Avenue, 32nd Floor | ) | |
| New York, NY 10017, | ) | |
| | ) | |
| DOUBLE EAGLE PETROLEUM CO., | ) | |
| 777 Overland Trail, Suite 208 | ) | |
| P.O. Box 766 | ) | |
| Casper, WY 82602-0766, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

| | |
|---|---|
| STATE OF WYOMING | ) |
| 123 Capitol Building | ) |
| Cheyenne, WY 82002 | ) |
| | ) |
|       Defendant-Intervenor. | ) |
| | ) |

**MOTION OF ANADARKO PETROLEUM CORPORATION,**
**WARREN RESOURCES, INC. AND DOUBLE EAGLE PETROLEUM CO.**
**TO STRIKE EXTRA-RECORD EVIDENCE RELIED ON IN SUPPORT OF PLAINTIFF**
**THEODORE ROOSEVELT CONSERVATION PARTNERSHIP'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant-Intervenors Anadarko Petroleum Corporation ("Anadarko"), Warren

Resources, Inc. ("Warren") and Double Eagle Petroleum Co. ("Double Eagle") (collectively

"Defendant-Intervenors") respectfully move this Court to strike from Plaintiff Theodore

Roosevelt Conservation Partnership's ("TRCP") Motion for Summary Judgment, Memorandum

of Law, and Statement of Material Facts all references to material not contained in the

administrative record before the Bureau of Land Management ("BLM") and therefore not

properly before this Court.  TRCP attempts to rely on declarations, documents and exhibits that

constitute extra-record evidence, that were not before the agency at the time of its decision, and

that did not contribute to its decision-making process.  These documents, statements and

references thereteo should be stricken.

Specifically, Defendant Intervenors move to strike: (i) the Declaration of Clait E. Braun

and attached exhibits (Pl.'s Ex. A); (ii) the Declaration of Rollin D. Sparrowe and attached

exhibits (Pl.'s Ex. B); (iii) Dear Reader Letter regarding Final Programmatic Environmental

Impact Statement ("PEIS") on Wind Energy Development on BLM-Administered lands in the

Western United States (Pl.'s Ex. K); (iv) Figure, Rawlins, Wyoming BLM Field Office Wind

Resource Potential (Pl.'s Ex. L); (v) Letter from Anadarko regarding Wind Energy Development Draft PEIS (Pl.'s Ex. M); and (vi) Wyoming Game & Fish Department January 2008 Memorandum (Pl.'s Ex. N).  TRCP also cites to, but does not attach, additional documents for which it provides no reference to the Administrative Record, including: (a) deVohs, Jr., J.D., *et al*., 2003, Mule deer conservation: issues and management strategies (TRCP SOF ¶8); (b) Garrott, R.A., *et al.,* 1987, Movements of female mule deer in Northwest Colorado, Journal Wildlife Management (TRCP SOF ¶¶6, 7, 9, 10); (c) Sawyer, H., *et. al.*, 2005, Wildlife Society Bulletin: 33(4):1266 (TRCP SOF ¶¶6, 10); (d) Walker, *et al.*, 2007, Greater Sage Grouse Population Response to Energy Development and Habitat Loss, Journal of Wildlife Management, 71:2644-2654 (TRCP SOF ¶¶18, 19); (e) Public Scoping Notice Continental Divide-Creston Natural Gas Development Project Environmental Impact Statement (April 2006) (TRCP SOF ¶38); (f) Task Group Meeting minutes, Nov. 2005 (TRCP SOF ¶176); (g) Declaration of Frank Blomquist, dated Oct. 5, 2007 (TRCP SOF ¶¶206, 236); and (h) Final Environmental Impact Statement on Wind Energy Development on BLM lands (TRCP SOF ¶219; Pl.'s Mem. at 23).  Defendant-Intervenors also seek to strike all references to these declarations, documents and exhibits, and arguments relying thereon, in TRCP's motion, memorandum of law, and statement of material facts.

The federal defendants lodged the Administrative Record in this case on February 1, 2008 (Docket No. 27), which TRCP disputed as being incomplete.  After an agreement concerning the content and completeness of the Administrative Record, the federal defendants supplemented that record on March 28, 2008 (Docket No. 31),[1] which was not disputed by

---

[1]  The federal defendants supplemented the record again on April 17, 2008 in response to TRCP's amended complaint.  (Docket No. 39).

TRCP.  Instead of moving to resolve the content of the record before the Court, TRCP now simply seeks to introduce and attempts to rely on evidence not in the Administrative Record.

Despite the well-established rule that an agency decision can be reviewed only on the record before the agency, nearly all of TRCP's arguments rest on the extra-record evidence it now attempts to submit in this proceeding.  Virtually all of the arguments in the memorandum and many of the statements of material facts rely, in whole or in part, on extra-record materials. Moreover, the declarations impermissibly contain expert opinion.  These declarations are improperly before this Court and purport to address ultimate issues before the Court for resolution.  TRCP failed, however, to provide BLM an opportunity to respond to these arguments during the many opportunities for public comment on the challenged actions.  It cannot now, at this late juncture, seek to have these arguments considered by the Court in its attempt to overturn the Agency action.

Finally, TRCP's 65-page statement of "material" facts includes information unrelated to any of its arguments in its memorandum in support of its motion for summary judgment. Specifically, Paragraphs 209-218 reference methane seeps that are not cited or discussed in its summary judgment memorandum.  Defendant-Intervenors also respectfully move to strike these statements from TRCP's statement of facts, as they are not material to its motion for summary judgment.

Pursuant to Local Rule 7.1(m), counsel for Defendant-Intervenors has conferred with counsel for the other parties regarding this motion.  The State of Wyoming supports this motion. The federal defendants take no position on this motion.  TRCP opposes this motion.

Defendant-Intervenors respectfully request an oral hearing on this motion under Local Rule 7.1(f).

Respectfully submitted,


_____/s/ Michael B. Wigmore_____
Michael B. Wigmore (DC Bar # 436114)
Bingham McCutchen LLP
2020 K Street, N.W.
Washington, D.C.  20006
(202) 373-6000
(202) 373-6001 (facsimile)

*Counsel for Anadarko Petroleum Corporation, Warren Resources, Inc. and Double Eagle Petroleum Co.*


Robert C. Mathes (DC Bar # 484255)
Bjork Lindley Little PC
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 892-1400
(303) 892-1401 (facsimile)

*Counsel for Double Eagle Petroleum Co.*

Dated:  June 12, 2008


A/72555251.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THEODORE ROOSEVELT<br>CONSERVATION PARTNERSHIP<br>555 Eleventh St. N.W., 6th Floor<br>Washington, DC 20004,<br><br>        Plaintiff,<br><br>    v.<br><br>DIRK KEMPTHORNE, in his official<br>capacity as the Secretary of the United States<br>Department of the Interior<br>1849 C Street, N.W.<br>Washington, DC 20240,<br><br>   and<br><br>UNITED STATES BUREAU OF LAND<br>MANAGEMENT<br>1849 C Street, N.W., Room 406-LS<br>Washington, DC 20240,<br><br>    Defendants.<br>_____<br><br>ANADARKO PETROLEUM CORPORATION,<br>P.O. Box 1330<br>Houston, TX 77251-1330,<br><br>WARREN RESOURCES, INC.,<br>489 Fifth Avenue, 32nd Floor<br>New York, NY 10017,<br><br>DOUBLE EAGLE PETROLEUM CO.,<br>777 Overland Trail, Suite 208<br>P.O. Box 766<br>Casper, WY 82602-0766,<br><br>    Defendant-Intervenors.<br>_____ | CASE NO. 1:07-cv-01486-RJL |

|  |  |
|---|---|
| STATE OF WYOMING | ) |
| 123 Capitol Building | ) |
| Cheyenne, WY 82002 | ) |
|  | ) |
|      Defendant-Intervenor. | ) |
|  | ) |

**MEMORANDUM IN SUPPORT OF ANADARKO PETROLEUM CORPORATION, WARREN RESOURCES, INC. AND DOUBLE EAGLE PETROLEUM CO.'S <u>MOTION TO STRIKE</u>**

Plaintiff Theodore Roosevelt Conservation Partnership ("TRCP") seeks review of the Bureau of Land Management's ("BLM's") Atlantic Rim Natural Gas Field Development Project (the "Project") Record of Decision ("ROD"), and site-specific approvals of various Plans of Development ("PODs").  TRCP alleges violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370f, and the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701-1785.

In its motion for summary judgment, memorandum of law, ("Pl.'s Mem.") and statement of material facts ("SOF"), filed on May 6, 2008, TRCP cites to and relies upon numerous documents that are extra-record evidence not presented to BLM during consideration of the Project.  This extra-record evidence includes the declarations of Clait E. Braun, Ph.D (Exhibit A to Pl.'s Mem.) and Rollin D. Sparrowe (Exhibit B to Pl.'s Mem.), exhibits attached to those declarations, TRCP's Exhibits K, L, M and N, and several documents referenced throughout its

statement of material facts and memorandum of law.[1]  Moreover, the Braun and Sparrowe

declarations contain opinion testimony not properly before this Court.

By referencing and citing such extra-record evidence, TRCP is improperly seeking to

have the Court overturn an agency decision based on evidence that was not presented to the

agency at the time of its decision.  TRCP's 65-page statement of "material" facts also includes

numerous statements not relevant to its arguments.  All such evidence and statements should be

stricken from TRCP's moving papers.

## I.     FEDERAL COURT REVIEW OF ADMINISTRATIVE PROCEEDINGS IS LIMITED TO THE RECORD AS IT EXISTED AT THE TIME THE AGENCY MADE ITS DETERMINATION.

It is axiomatic that judicial review of administrative proceedings is confined to review of

the record compiled by the agency.  Review of an agency's decision based on alleged violations

of FLPMA and NEPA, as in this case, is based on the Administrative Procedure Act ("APA"),

5 U.S.C. §§ 701-706.  The APA provides that a court shall review agency action based on a

review of the "whole record."  5 U.S.C. § 706.  The task of the reviewing court is to apply the

standard of review to the factual findings and legal conclusions of the agency.  Its review is

confined to "the full administrative record before the agency at the time the decision was made."

*Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981).  *See also Fla. Power &*

*Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973);

---

[1]  These documents include: (a) deVohs, Jr., J.D., *et. al.*, 2003, Mule Deer Conservation: Issues & Management Strategies (TRCP SOF ¶8); (b) Garrott, R.A., *et al.* 1987, Movements of Female Mule Deer in Northwest Colorado, J. Wildlife Mgmt. 51(3):640 (TRCP SOF ¶¶6, 7, 9, 10); (c) Sawyer, H, *et al.*, 2005, Wildlife Soc'y Bulletin: 33(4):1266 (TRCP SOF ¶¶6, 10); (d) Walker, *et al.*, 2007, Greater Sage Grouse Population Response to Energy Development & Habitat Loss, J. of Wildlife Mgmt., 71:2644-2654 (TRCP SOF ¶¶18, 19); (e) Public Scoping Notice Continental Divide-Creston Natural Gas Development Project Environmental Impact Statement (April 2006) (TRCP SOF ¶38); (f) Task Group Meeting minutes, Nov. 2005 (TRCP SOF ¶176); (g) Declaration of Frank Blomquist, dated Oct. 5, 2007, filed in *NRDC v. Kempthorne*, Case No. 07-CV-1709 (TRCP SOF ¶¶206, 236); and (h) Final Programmatic Environmental Impact Statement on Wind Energy Development on BLM-Administered Lands in the Western United States (TRCP SOF ¶219; Pl.'s Mem. at 23).

*Cmty. for Creative Non-Violence v. Lujan*, 908 F.2d 992, 997-98 (D.C. Cir. 1990). The Court

may not reach beyond the record to overturn the action of an agency.

Despite this familiar and unequivocal rule, TRCP attempts to introduce, for the first time,

new evidence in its summary judgment papers before this Court. TRCP never sought to make a

proper showing that new material should be allowed to supplement the record; nor did it ever

signal to this Court that it was doing anything out of the ordinary.[2] This Court should not

condone TRCP's efforts to subvert the orderly process of judicial review. "If a court is to review

an agency's action fairly, it should have before it neither more nor less information than did the

agency when it made its decision." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788,

792 (D.C. Cir. 1984).

The rule confining federal court review of agency action to the record is not a mere

procedural formality. Rather, it is a requirement that flows logically out of the standard of

review of administrative proceedings, and is supported by the policies underlying the very

existence of administrative agencies. Agencies, not the courts, are charged with evaluating the

evidence adduced in administrative proceedings. Failure to adhere to this principle would force

the court to "intrude upon the domain which Congress has exclusively entrusted to an

administrative agency." *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943). The very notion of

deference to agency action, articulated by the Supreme Court in *Chevron U.S.A., Inc. v. Natural*

---

[2] TRCP had available procedural mechanisms to request this Court to expand the administrative record. Courts may allow extra-record evidence only in exceptional circumstances, including where there is a "strong showing of bad faith or improper behavior" or when the record does not explain the agency's decision or there is no record at all. *See Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971)). None of these circumstances exist. There is more than ample evidence in the administrative record to support the agency's decision. Moreover, TRCP never even attempted to make a proper showing to this Court that the extra-record evidence it now seeks to introduce should be part of the record on review, and it should not be allowed to do so now. *See Sociedad Anonima Viña Santa Rita v. U.S. Dep't of Treasury*, 193 F. Supp. 2d 6, 18 n.11 (D.D.C. 2001) (rejecting attempt to rely on extra-record evidence due to party's failure to identify applicable exception). *See also New River Valley Greens v. U.S. Dep't of Transp.*, 129 F.3d 1260, 1997 WL 712887, at *1 (4th Cir. 1997) (granting motion to strike where plaintiff submitted affidavits with motion for summary judgment because attempt to supplement record was untimely and in violation of pretrial order).

*Res. Def. Council, Inc.*, 467 U.S. 837 (1984), is undercut by allowing new evidence to be

introduced to this Court. "[T]he focal point for judicial review should be the administrative

record already in existence, not some new record made initially in the reviewing court." *FPC v.*

*Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 331 (1976) (quoting *Camp*, 411 U.S. at 142).

> The last thing a reviewing court should do is to encourage parties
> not to submit pertinent information to an agency and then seek the
> judicial overturning of agency action based on the failure to
> consider what the petitioning party supposedly knew but did not
> tell the agency. Engaging in a process of predicating a judicial
> conclusion of the irrationality of an agency's decision on
> information not before the agency is therefore understandably a
> perfect violation of the law of this Circuit pertaining to judicial
> review.

*Sw. Ctr. for Biological Diversity v. Babbitt*, 131 F. Supp. 2d 1, 6 (D.D.C. 2001). TRCP's

disregard of these bedrock principles should not be countenanced.

Indeed, many of TRCP's arguments in its Memorandum in Support of its Motion for

Summary Judgment, and much of its Statement of Material Facts, cite to or rely only on extra-

record evidence.[3] For example, TRCP cites to documents prepared after the BLM made its

decision in this case. *See, e.g.*, TRCP SOF ¶¶ 18, 19 (citing a 2007 Walker article); TRCP SOF

¶¶ 24, 28, 29 (citing a 2008 Memorandum). These documents were not before BLM at the time

of its decision and are improper here.

Further, the extra-record declarations submitted by TRCP apparently seek to cast doubt

on the wisdom of the BLM's decisions. "However, consideration of outside evidence 'to

determine the correctness or wisdom of the agency's decisions is not permitted.'" *Nat'l*

*Treasury Employees Union v. Hove*, 840 F. Supp. 165, 169 (D.D.C. 1994) (citing *Asarco, Inc. v.*

---

[3] This extra-record evidence is cited in TRCP's statement of facts at ¶¶ 6-10, 18-19, 24, 28-29, 38, 176, 206, 219-221 and 236 and throughout TRCP's memorandum of law including at pages 4, 6-7, 19, 21-24, 27, 28, 32-34, and 40. Rule 7(h) of the Local Rules of this Court requires that the statement of facts "include references to the parts of the record relied on to support the statement."

*EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980)); *see also Envtl. Def. Fund, Inc.*, 657 F.2d at 286

("[A] judicial venture outside the record . . . can never, under *Camp v. Pitts*, examine the

propriety of the decision itself.").

In fact, TRCP admits in its Statement of Facts that it is relying on "other supporting

material" in addition to documents in the Administrative Record.  TRCP SOF at i.  Despite

attaching and citing to numerous documents that are extra-record, TRCP only makes a general

reference to seeking "judicial notice of official government publications referenced herein."  *Id.*

Vague and generic references to a court's power to take judicial notice in appropriate

circumstances, however, cannot be used to circumvent the general prohibition on extra-record

evidence in cases involving review of agency action on the record.

In any event, judicial notice is inapplicable here.  Federal Rule 201(b) allows the Court to

take judicial notice of a fact when it is "not subject to reasonable dispute in that it is either

(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate

and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Fed. R. Evid. 201(b).  *See also Wilkins v. Ramirez*, 455 F. Supp. 2d 1080, 1101 (S.D. Cal. 2006)

(rejecting request to take judicial notice as "over broad because the records are neither generally

known to the Court or capable of easy corroboration").  Here, TRCP does not even specifically

identify those documents or facts it asks this Court to take judicial notice of, much less establish

that such facts are "not subject to reasonable dispute."  More important, TRCP has is attempting

to rely on the extra-record evidence to assert issues that are very much in dispute.

The cases TRCP cites do not support TRCP's apparent request for a blanket exception to

the extra-record rule.  None involves challenges to agency action under the APA.  *See Canales*

*Martinez v. Dow Chem. Co.*, 219 F. Supp. 2d 719, 735 n.24 (E.D. La. 2002) (taking judicial

notice of foreign judicial system on a motion to dismiss on grounds of forum non conveniens in personal injury suit against private companies); *Austracan (U.S.A.) Inc. v. Neptune Orient Lines, Ltd.*, 612 F. Supp. 578, 584-85 (S.D.N.Y. 1985) (taking judicial notice of definition of "pier-to-house" shipment in government publication acknowledging assistance of "formidable number of leading industry representatives" in admiralty case alleging partial loss of shipment); *Nehus v. Alaska Marine Towing, Inc.*, 519 F. Supp. 328, 332 n.2 (W.D. Wash. 1981) (taking judicial notice of general weather conditions in United States Coast Pilot in negligence case); *ASG Indus., Inc. v. United States*, 467 F. Supp. 1187, 1195 (Cust. Ct. 1979) (taking judicial notice of government published figures covering exports, imports and domestic production in action seeking imposition of countervailing duties under U.S. trade law).  TRCP's request for judicial notice, therefore, must be rejected.

## II.    TRCP DISREGARDED OPPORTUNITIES TO BRING ITS PURPORTED EVIDENCE TO THE AGENCY'S ATTENTION.

TRCP's actions are highly suspect given the numerous opportunities it had to present evidence to the agency.  An "agency cannot reasonably be expected to take a hard look unless the parties participate in the task of identifying the hard problems, and of bringing to light pertinent information and analysis bearing on their resolution."  *R.I. Consumers' Council and Div. of Pub. Utils. & Carriers v. FPC*, 504 F.2d 203, 212 (D.C. Cir. 1974);  *See also Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 553-54 (1978) ("[A]dministrative proceedings should not be a game or a forum to engage in unjustified obstructionism by making cryptic and obscure reference to matters that 'ought to be' considered and then, after failing to do more to bring the matter to the agency's attention, seeking to have the agency determination vacated on the ground that the agency failed to consider matters 'forcefully presented.'"); *City of Angoon v. Hodel*, 803 F.2d 1016, 1022 (9th Cir. 1986) ("Those

who challenge an EIS bear a responsibility 'to structure their participation so that it is
meaningful, so that it alerts the agency to the intervenors' position and contentions.'") (citation
omitted).

TRCP failed to submit to BLM the declarations, documents, and attached exhibits it now
seeks to have considered by this Court.  In *Southwest Center For Biological Diversity v. Babbitt*,
this Court recognized,

> It must also be recalled that if a party petitions an agency, the
> petitioner may provide information which that party believes that
> the agency ought to consider before making its decision.  If the
> agency nevertheless ignores the information, then its failure to
> consider that information may render its decision arbitrary and
> capricious because the information was so obviously important that
> no reasonable person would have ignored it in the consideration of
> the question before the agency.  But, when that argument is made
> by a party who commenced the agency process by a petition and
> who had the unquestioned right to bring whatever information she
> sought fit to the agency's attention, but did not do so, the argument
> for its admission during judicial review is *non sequitur*; the agency
> cannot be fairly criticized for "ignoring" what the plaintiffs never
> brought to its attention.

131 F. Supp. 2d at 6.  In that case, the Court declined to allow a plaintiff to submit extra-record
affadavits, finding that the "affidavits contain information that should have been submitted to the
agency before this dispute reached the courts."  *Id.* at 7.  "To allow the affidavits to be
considered now would be to permit ex post supplementation of the record, which is not
consistent with the prevailing standards of agency review."  *Id.*  The D.C. Circuit has "repeatedly
applied [the rule against supplementing the agency record] to bar introduction of litigation
affidavits to supplement the administrative record."  *AT&T Info. Sys., Inc. v. Gen. Servs. Admin.*,
810 F.2d 1233, 1236 (D.C. Cir. 1987); *see also Newton County Wildlife Ass'n v. Rogers*, 141
F.3d 803, 808 (8th Cir. 1998) (declining to allow the plaintiff to rely on extra-record evidence
because "[t]o the extent the Wildlife Association's extra-record proffers consisted of expert

opinions and studies analyzing environmental impacts and conditions known prior to the [agency action], the Association failed to provide adequate justification for its failure to present those materials to the agency during its decision-making process").

TRCP had numerous opportunities to present this extra-record evidence to the agency, but failed to do so.  For example, the Braun Declaration cites to no evidence in the administrative record, but purports to address issues related to sage-grouse populations in support of TRCP's claim that BLM failed to consider adequately the potential impacts of the project on breeding and habitat of sage grouse.  *See e.g.*, Braun Decl. ¶¶ 9-21.  TRPC provided none of this information to the agency, and fails to provide any explanation of why it could not have made its case at the appropriate time.  Likewise, TRCP now attempts, for the first time, to submit evidence on the use of adaptive environmental management at an unrelated project (the Pinedale Anticline Project) through the Rollin D. Sparrowe Declaration.  *See* Sparrowe Decl., ¶¶ 3-4, 20-54.  Again, none of this information was submitted to the agency prior to its decision.[4]

In short, TRPC now seeks to supplement the administrative record and raise issues through declarations that it did not raise during the public comment period.  The Court should not condone TRCP's attempts to subvert well-established record review principles that apply to this case.

## III.    THE DECLARATIONS SUBMITTED BY TRCP INCLUDE IMPERMISSIBLE OPINION EVIDENCE THAT SHOULD BE STRICKEN.

In support of its motion for summary judgment, TRCP submits declarations which purport to provide conclusions requiring technical and/or specialized knowledge.  These opinions constitute expert opinion.  *See* Fed. R. Evid. 701, 702; *see generally* Daniel Mandelker, NEPA Law & Litig. § 4:47 (2d ed. 2007).  Neither of the declarants, however, has been identified or

---

[4]  In any event, this information relating to the Pinedale Anticline Project is irrelevant to BLM's decision under review here.

qualified as experts. *See* Fed. R. Evid. 702. *See also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588-95 (1993) (establishing the standard for the admission of expert testimony).

For example, Braun asserts his opinion that one of the chief threats to sage-grouse population is oil and gas development on public lands. Braun Decl. ¶¶10-11. In addition, Braun opines on the adequacy of studies on sage-grouse needs and the significance of alleged impacts on its habitat. *See, e.g.*, Braun Decl. ¶¶12-18, 21. This affidavit has been submitted solely to dispute BLM's findings with respect to appropriate mitigation measures for the sage grouse. Likewise, the Declaration of Rollin D. Sparrowe contains his personal views regarding the principles of adaptive management. *See e.g.*, Sparrowe Decl. ¶¶22, 23, 28. Moreover, Sparrowe also references his experience relating to an entirely separate project, the Pinedale Anticline Project, in an attempt to draw analogies to BLM's decisions related to the instant Project. *See e.g.*, Sparrowe Decl. ¶29-54.

The declarants have not been identified or qualified as experts in this case, and, therefore, such opinions are inadmissible. The affidavits further fail to provide any information to explain the basis of their opinion, as required under Federal Rules of Evidence 701 and 702. Even if the declarants could be qualified as experts, the affidavits are improper as they are "'technical testimony' prepared 'for the purpose of contesting the scientific merit' of the agency's analysis." *Kunaknana v. Clark*, 742 F.2d 1145, 1152 (9th Cir. 1984). TRCP cannot attempt to supplement the record for the sole purpose of engaging in a battle of experts with an agency, because the Court must defer to the agency. *See, e.g., Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989) ("When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views persuasive."); *Sierra Club v. U.S. Dep't of Transp.*, 753 F.2d 120, 129 (D.C.

Cir. 1985) ("When a court considers the sufficiency of an agency's environmental analysis, 'the court is not to rule on the relative merits of competing scientific opinion.'") (citation omitted); *Sierra Club v. Froehlke*, 816 F.2d 205, 214 (5th Cir. 1987) (scientific disagreements among experts "are not the type that the federal courts are in the business to resolve.")  As such, these declarations are improperly before this Court, are irrelevant to the issues to be decided, and should be stricken.

## IV.    TRCP'S IMMATERIAL STATEMENT OF FACTS SHOULD BE STRICKEN.

Federal Rule of Civil Procedure 56 provides for summary judgment where there is no issue of material fact.  Rule 7(h) of the Local Rules of this Court further provides that "[e]ach motion for summary judgment shall be accompanied by a statement of *material* facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement."  (emphasis added).  TRCP's statement of "material" facts includes statements that are not cited in its Motion for Summary Judgment and Supporting Memorandum of Points and Authorities.  In particular, paragraphs 209-218 proffer evidence regarding methane seeps that are not addressed anywhere in TRCP's motion papers.  As such, any argument regarding methane seeps by TRCP are waived.  These statements, therefore, are immaterial to TRCP's motion and should be stricken.

### CONCLUSION

For the foregoing reasons, Defendant-Intervenors Anadarko, Warren and Double Eagle respectfully move this Court to strike the extra-record evidence relied upon by TRCP in support of its motion for summary judgment, and arguments relying thereon, and to prohibit TRCP from citing to or otherwise using such references in its motion papers.

Respectfully submitted,


　　　/s/ Michael B. Wigmore
Michael B. Wigmore (DC Bar # 436114)
Bingham McCutchen LLP
2020 K Street, N.W.
Washington, D.C.  20006
(202) 373-6000
(202) 373-6001 (facsimile)

*Counsel for Anadarko Petroleum Corporation,*
*Warren Resources, Inc. and Double Eagle*
*Petroleum Co.*


Robert C. Mathes (DC Bar # 484255)
Bjork Lindley Little PC
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 892-1400
(303) 892-1401 (facsimile)

*Counsel for Double Eagle Petroleum Co.*


Dated:  June 12, 2008


A/72555792.2

11

Unreported Case

Westlaw.

129 F.3d 1260 (Table)                                                                                                Page 1
129 F.3d 1260 (Table), 1997 WL 712887 (4th Cir.(Va.)), 46 ERC 1155
**Unpublished Disposition**
**(Cite as: 129 F.3d 1260, 1997 WL 712887 (4th Cir.(Va.)))**

C NOTICE: THIS IS AN UNPUBLISHED
OPINION.

(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in
the Federal Reporter. Use FI CTA4 Rule 36 for rules
regarding the citation of unpublished opinions.)

United States Court of Appeals, Fourth Circuit.
THE NEW RIVER VALLEY GREENS; The Sierra
Club; The New River Valley
Environmental Coalition, Plaintiffs-Appellants,
v.
UNITED STATES DEPARTMENT OF
TRANSPORTATION; Federico F. Pena, Secretary of
Transportation; Federal Highway Administration;
Rodney Slater, Administrator,
Federal Highway Administration, Defendants-
Appellees,
and
Robert E. MARTINEZ, Administrator, Virginia
Department of Transportation,
Defendant.
**No. 96-2545.**

Argued Aug. 12, 1997.
Decided Nov. 17, 1997.

Appeal from the United States District Court for the
Western District of Virginia, at Roanoke. Jackson L.
Kiser, Senior District Judge. (CA-95- 1203-R).

Matthew Dean Pethybridge, Painter, Kratman,
Pethybridge, Windell & Crenshaw, Blacksburg,
Virginia, for Appellants.

Edward John Shawaker, United States Department of
Justice, Washington, D.C., for Appellees.

Lois J. Schiffer, Assistant Attorney General, John T.
Stahr, United States Department of Justice,
Washington, D.C., for Appellees.

Before RUSSELL and HALL, Circuit Judges, and
MICHAEL, Senior United States District Judge for
the Western District of Virginia, sitting by
designation.

OPINION

PER CURIAM

I. *Chronology*

A. *Factual*

**\*1** In June 1990, the Virginia Department of
Transportation ("VDOT") began planning the
construction of a five mile stretch of highway in the
Ellett Valley near Blacksburg, Virginia. As
envisioned, the road would relieve local traffic
congestion along U.S. Route 460, provide a more
direct route from Roanoke to Blacksburg, and serve
as a test facility for development of a new "intelligent
vehicle/highway system." This stretch of highway,
nicknamed the "Smart Road," ultimately would
include sensors in the road and possible magnetic
levitation and monitoring systems to assist drivers in
vehicle navigation.

Because the highway was to be constructed and
financed, in part, with Federal monies, the National
Environmental Policy Act ("NEPA"), 42 U.S.C. §
4321*et seq.,* applied to the project. Pursuant to the
Act's requirements, VDOT promulgated a Draft
Environmental Impact Statement ("DEIS") on August
20, 1991, made it available to the public the next day,
and, thereafter, held public hearings on it to receive
citizen commentary. On March 5, 1993, VDOT
issued the project's Final Environmental Impact
Statement ("FEIS") which the Federal Highway
Administration ("FHWA") approved on March 26,
1993.

On May 2, 1994, the United States Fish and Wildlife
Service ("FWS") informed the FHWA that a certain
endangered plant, the smooth coneflower, had been
found in the project area. As a result of the
discovery, VDOT proposed a 750 foot shift in the
final route of some two miles of the Smart Road. On
June 5, 1995, the FWS issued a biological opinion
concluding that this slight relocation of the road
along the new "southern alignment" would pose no
threat to the continued well-being of the endangered

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

129 F.3d 1260 (Table), 1997 WL 712887 (4th Cir.(Va.)), 46 ERC 1155
**Unpublished Disposition**
**(Cite as: 129 F.3d 1260, 1997 WL 712887 (4th Cir.(Va.)))**

flower.

 In response to this partial redirection of the road, the defendants issued an "Addendum" to the FEIS in September 1995. The Addendum's purpose was to assess whether the altered alignment of the road would produce any significant new environmental repercussions. The Addendum concluded that because the environmental implications of the road's partial realignment were minor, preparation of a Supplemental Environmental Impact Statement ("SEIS") was unnecessary under the NEPA. The Addendum was released on October 5, 1995.

 B. *Procedural*

 The plaintiffs, environmental activists in the Blacksburg area, brought this action on November 15, 1995. They alleged, *inter alia,* that defendants [FN1] violated the NEPA by preparing the Addendum to the FEIS in lieu of a SEIS and by originally using inadequate bird, wildlife and plant surveys in drafting the FEIS.

> FN1. By Order of April 10, 1996, the district court dismissed The Honorable Robert E. Martinez, Virginia Secretary of Transportation, as a party to the suit. The United States Department of Transportation, the FHWA, and their employees remain defendants.

 On February 23, 1996, the district court issued a pretrial Order which, among other things, established May 8, 1996 as the court's deadline for the plaintiffs to file any motion to supplement the administrative record and established June 10, 1996 as the deadline for the parties to file any motion for summary judgment. On June 10, 1996, the New River Valley Greens ("Greens") filed a motion for summary judgment and a supporting memorandum of law, attached to which were three affidavits from purported "experts" stating the need for a SEIS. On July 8, 1996, the FHWA moved to strike the affidavits and other exhibits appended to the Greens' summary judgment motion. The court by Order of August 9, 1996 granted the motion to strike, finding that the plaintiffs' attempt to supplement the administrative record with the affidavits was untimely and in violation of the pretrial order.

**\*\*2** On October 1, 1996, the district court granted defendants' July 3, 1996 motion for summary judgment [FN2] as to all counts in the complaint. By the same Order and accompanying Memorandum Opinion, the court denied plaintiffs' motion for summary judgment. Plaintiffs take the instant appeal from that decision.

> FN2. Defendants had received an extension of time from the court to file the motion.

II. *Standards of Review*

 As to questions of law, including the district court's grant of summary judgment to defendants, review is *de novo.* Scarborough v. Ridgeway, 726 F.2d 132, 135 (4th Cir.1984). Summary judgment here issued following the district court's review of an informal agency decision. Thus, the "arbitrary and capricious" standard of district court review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), applies to this court on review of a grant of summary judgment. Overstreet v. Kentucky Central Life Ins. Co., 950 F.2d 931, 938 (4th Cir.1991); United States v. Carolina Transfer Co., 978 F.2d 832, 835 (4th Cir.1992). As to factual conclusions reached by the district court, review is for clear error. Hendricks v. Central Reserve Life Ins. Co., 39 F.3d 507, 512 (4th Cir.1994).

 III. *The National Environmental Policy Act's Mandates*

 A. *Supplemental Environmental Impact Statement*

 Section 102(2)(C) of the NEPA, 42 U.S.C. 4332(2)(C) requires the preparation of Environmental Impact Statements, "in every ... major Federal action[ ] significantly affecting the quality of the human environment...." Federal regulations interpreting the NEPA state, in pertinent part, that agencies:
> [s]hall prepare supplements to either draft or final environmental impact statements if ... [t]here are *significant new circumstances* or information relevant to environmental concerns and bearing on the proposed action or its impacts.

40 C.F.R. § 1502.9(c)(1) (emphasis added).

 Plainly, not every new circumstance is a "significant new circumstance" requiring a SEIS. Rather, as this

129 F.3d 1260 (Table)                                                                                               Page 3
129 F.3d 1260 (Table), 1997 WL 712887 (4th Cir.(Va.)), 46 ERC 1155
**Unpublished Disposition**
**(Cite as: 129 F.3d 1260, 1997 WL 712887 (4th Cir.(Va.)))**

court has stated, " 'the new circumstance must present a *seriously* different picture of the environmental impact of the proposed project from what was previously envisioned.' " *Hughes River Watershed Conservancy v. Glickman, 81 F.3d 437, 443 (4th Cir.1996)* (emphasis added) (quoting *Hickory Neighborhood Defense League v. Skinner, 893 F.2d 58, 63 (4th Cir.1990)*). *Hughes* requires only that agencies continue to take a "hard look" at the environmental consequences of their proposed projects even after preparation of an initial environmental impact statement; the case does not stand for the proposition that any change to a project mandates the preparation of a SEIS. *81 F.3d at 443* (citing *Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 374 (1989)*).

Here, the route of the Smart Road was shifted a mere 750 feet southward over the course of a two mile stretch in order to accommodate the endangered smooth coneflower. While certain other new circumstances  [FN3] may have resulted from the modified route, they hardly presented the "seriously different picture of the environmental impact" of the project necessary to demand the preparation of a SEIS. Indeed, were the NEPA actually to require a SEIS when a modified project's new environmental impact is patently insignificant, it "... would render agency decisionmaking intractable, always awaiting updated information only to find the new information outdated by the time a decision is made." *Marsh,* 490 U.S. at 373.

> FN3.  Plaintiffs cited below as other "significant new circumstances" resulting from the slight modification in the Smart Road route: (1) noise impacts to twenty-nine residences as opposed to the twenty-five cited in the FEIS, (2) the relocation of six families rather than the two mentioned in the FEIS, and (3) an increase from 120 to 140 acres of Agricultural and Forestal land to be acquired for the project.

**\*\*3** Because the Smart Road's environmental impact remained virtually unchanged after the road's shifted alignment, the defendants' decision to prepare an Addendum to the FEIS rather than a SEIS was neither arbitrary, capricious nor contrary to the requirements of the NEPA. Consistent with *Hughes, supra,* the defendants met their obligation to continue

to take a "hard look" at the environmental consequences of the Smart Road when they issued the Addendum to the FEIS.

B. *The Adequacy of the Final Environmental Impact Statement*

Plaintiffs allege that the defendants' analysis of the Smart Road's impact on birds, wildlife, and plants was arbitrary and capricious because the scientific data incorporated into the FEIS came from atlases and other reference sources several years old at the time. Specifically, with respect to the bird data collected for the FEIS, the Greens argue that data from an atlas was between five and ten years old at the time of the FEIS. Reliance by the defendants on such slightly dated information, however, cannot be said, as a matter of law, to have been irrational, arbitrary or capricious. The plaintiffs adduced no evidence below that local bird populations had changed so drastically between publication of the data in the reference sources and that data's incorporation into the FEIS as to render the data inherently unreliable or archaic.

With respect to wildlife, the plaintiffs do not point to any actual effect on fauna that was not considered in the FEIS.  [FN4] Finally, after issuance of the FEIS and after the discovery of the coneflower, no fewer than four additional plant surveys were conducted. These additional plant surveys, likewise, cannot be said to have been inadequate, as a matter of law.

> FN4.  In a November 6, 1991 letter to the defendants, for example, the FWS comments that no further explication of the area's well-known wildlife is required. The letter was incorporated into the FEIS at section VII. Of course, once the existence of the endangered coneflower later was made known to defendants, the Addendum was appended to the FEIS. As well, two alternative routes for the road, alternatives 7 and 10, which might have impacted endangered species of local fish in the Roanoke River, in fact, were not chosen.

C. *Plaintiffs' Untimely Attempt to Supplement the Administrative Record*

This court defers to the right of a district court to set

129 F.3d 1260 (Table)

Page 4

129 F.3d 1260 (Table), 1997 WL 712887 (4th Cir.(Va.)), 46 ERC 1155

**Unpublished Disposition**

**(Cite as: 129 F.3d 1260, 1997 WL 712887 (4th Cir.(Va.)))**

and enforce the discovery deadlines. Here, the court established May 8, 1996 as the deadline for the parties to submit evidence to supplement the administrative record. The Greens violated the February 23, 1996 scheduling order when they filed the three affidavits at issue on June 10, 1996, more than one month late. For this reason, the district court acted within its sound discretion when it granted defendants' motion to strike this untimely submitted additional evidence.

IV. *Conclusion*

For the foregoing reasons, we hold that the district court properly granted summary judgment in favor of defendants and against plaintiffs on all NEPA claims. It is so ordered.

*AFFIRMED*

•THE NEW RIVER VALLEY GREENS, et. al., Plaintiffs-Appellants, v. UNITED STATES DEPARTMENT OF TRANSPORTATION, et al., Defendants-Appellees., 1997 WL33513017 (Appellate Brief) (C.A.4 March 5, 1997), Brief of Appellants

129 F.3d 1260 (Table), 1997 WL 712887 (4th Cir.(Va.)), 46 ERC 1155 Unpublished Disposition

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THEODORE ROOSEVELT     )
CONSERVATION PARTNERSHIP    )
555 Eleventh St. N.W., 6th Floor    )
Washington, DC 20004,    )
    )
        Plaintiff,    )
    )
    v.    )    CASE NO. 1:07-cv-01486-RJL
    )
DIRK KEMPTHORNE, in his official    )
capacity as the Secretary of the United States    )
Department of the Interior    )
1849 C Street, N.W.    )
Washington, DC 20240,    )
    )
    and    )
    )
UNITED STATES BUREAU OF LAND    )
MANAGEMENT    )
1849 C Street, N.W., Room 406-LS    )
Washington, DC 20240,    )
    )
        Defendants.    )
_____)
    )
ANADARKO PETROLEUM CORPORATION,    )
P.O. Box 1330    )
Houston, TX 77251-1330,    )
    )
WARREN RESOURCES, INC.,    )
489 Fifth Avenue, 32nd Floor    )
New York, NY 10017,    )
    )
DOUBLE EAGLE PETROLEUM CO.,    )
777 Overland Trail, Suite 208    )
P.O. Box 766    )
Casper, WY 82602-0766,    )
    )
        Defendant-Intervenors.    )
_____)

|                          | )  |
|--------------------------|----|
| STATE OF WYOMING         | )  |
| 123 Capitol Building     | )  |
| Cheyenne, WY 82002       | )  |
|                          | )  |
|     Defendant-Intervenor. | ) |
|                          | )  |

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June, 2008, the foregoing Motion of Anadarko Petroleum Corporation, Warren Resources, Inc. and Double Eagle Petroleum Co. to Strike Extra-Record Evidence Relied on in Support of Plaintiff Theodore Roosevelt Conservation Partnership's Motion For Summary Judgment and accompanying papers were electronically filed through the CM/ECF system, which caused the following to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Donald G. Blankenau
Thomas R. Wilmoth
Steven Michael Kupka
Husch Blackwell Sanders LLP
206 South 13th Street
Suite 1400
Lincoln, NE 68508
don.blankenau@huschblackwell.com,
sharon.marburger@huschblackwell.com
tom.wilmoth@huschblackwell.com,
nancilee.holland@huschblackwell.com

Lori Caramanian
U.S. Department of Justice
1961 Stout Street, 8th Floor
Denver, CO 80294
lori.caramanian@usdoj.gov

Jay A. Jerde
Teresa R. Nelson
John S. Burbridge
Deputy Attorney General
Wyoming Attorney General's Office
123 Capitol Building
Cheyenne, WY 82002
jjerde@state.wy.us
tnelso@state.wy.us
jburb1@state.wy.us


                         /s/ Michael B. Wigmore
                         Michael B. Wigmore


A/72562060.1

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THEODORE ROOSEVELT | ) | |
| CONSERVATION PARTNERSHIP | ) | |
| 555 Eleventh St. N.W., 6th Floor | ) | |
| Washington, DC 20004, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-cv-01486-RJL |
| | ) | |
| DIRK KEMPTHORNE, in his official | ) | |
| capacity as the Secretary of the United States | ) | |
| Department of the Interior | ) | |
| 1849 C Street, N.W. | ) | |
| Washington, DC 20240, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES BUREAU OF LAND | ) | |
| MANAGEMENT | ) | |
| 1849 C Street, N.W., Room 406-LS | ) | |
| Washington, DC 20240, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ANADARKO PETROLEUM CORPORATION, | ) | |
| P.O. Box 1330 | ) | |
| Houston, TX 77251-1330, | ) | |
| | ) | |
| WARREN RESOURCES, INC., | ) | |
| 489 Fifth Avenue, 32nd Floor | ) | |
| New York, NY 10017, | ) | |
| | ) | |
| DOUBLE EAGLE PETROLEUM CO., | ) | |
| 777 Overland Trail, Suite 208 | ) | |
| P.O. Box 766 | ) | |
| Casper, WY 82602-0766, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

STATE OF WYOMING                     )
123 Capitol Building                 )
Cheyenne, WY 82002                   )
                                     )
      Defendant-Intervenor.          )
_____  )

# [PROPOSED] ORDER

UPON CONSIDERATION of the Motion of Anadarko Petroleum Corporation, Warren Resources, Inc. and Double Eagle Petroleum Co. to Strike Extra-Record Evidence Relied on in Support of Plaintiff Theodore Roosevelt Conservation Partnership's Motion For Summary Judgment, and for good cause shown, it is hereby:

ORDERED that the Motion of Anadarko Petroleum Corporation, Warren Resources, Inc. and Double Eagle Petroleum Co. to Strike Extra-Record Evidence Relied on in Support of Plaintiff Theodore Roosevelt Conservation Partnership's Motion For Summary Judgment is GRANTED.

The Court will strike the following extra record exhibits from Plaintiff's Motion for Summary Judgment and those portions of Plaintiff's memorandum that rely thereon:  (i) the Declaration of Clait E. Braun and attached exhibits (Pl.'s Ex. A); (ii) the Declaration of Rollin D. Sparrowe and attached exhibits (Pl.'s Ex. B); (iii) Dear Reader Letter regarding Final Programmatic Environmental Impact Statement ("PEIS") on Wind Energy Development on BLM-Administered lands in the Western United States (Pl.'s Ex. K) ; (iv) Figure, Rawlins, Wyoming BLM Field Office Wind Resource Potential (Pl.'s Ex. L); (v) Letter from Anadarko regarding Wind Energy Development Draft PEIS (Pl.'s Ex. M); and (vi) Wyoming Game & Fish Department January 2008 Memorandum (Pl.'s Ex. N).  The Court will also strike the portions of Plaintiff's summary judgment papers that rely on documents outside the administrative record, including: (a) deVohs, Jr., J.D., *et al.*, 2003, Mule deer conservation: issues and management

strategies (TRCP SOF ¶8); (b) Garrott, R.A., *et al.,* 1987, Movements of female mule deer in Northwest Colorado, Journal Wildlife Management ( TRCP SOF ¶¶6, 7, 9, 10); (c) Sawyer, H., *et. al.*, 2005, Wildlife Society Bulletin: 33(4):1266 (TRCP SOF ¶¶6, 10); (d) Walker, *et al.*, 2007, Greater Sage Grouse Population Response to Energy Development and Habitat Loss, Journal of Wildlife Management, 71:2644-2654 (TRCP SOF ¶¶18, 19); (e) Public Scoping Notice Continental Divide-Creston Natural Gas Development Project Environmental Impact Statement (April 2006) (TRCP SOF ¶38); (f) Task Group Meeting minutes, Nov. 2005 (TRCP SOF ¶176); (g) Declaration of Frank Blomquist, dated Oct. 5, 2007 (TRCP SOF ¶¶206, 236); and (h) Final Environmental Impact Statement on Wind Energy Development on BLM lands (TRCP SOF ¶219; Pl.'s Mem. at 23).  Finally, the Court will strike paragraphs 209-218 in Plaintiff's statement of material facts as immaterial to the instant proceedings.


It is SO ORDERED.


_____                    _____
Date                                              Richard J. Leon
                                                     United States District Judge


A/72562054.1