**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THEODORE ROOSEVELT | ) | |
| CONSERVATION PARTNERSHIP | ) | |
| 555 Eleventh St. N.W., 6th Floor | ) | |
| Washington, DC 20004 | ) | |
| (202) 654-4600, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:07-cv-01486-RJL |
| | ) | |
| v. | ) | |
| | ) | |
| DIRK KEMPTHORNE, in his official | ) | |
| capacity as the Secretary of the United | ) | |
| States Department of the Interior | ) | |
| 1849 C Street, N.W. | ) | |
| Washington, DC 20240 | ) | |
| (202) 208-3100, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES BUREAU OF LAND | ) | |
| MANAGEMENT | ) | |
| 1849 C Street, Room 406-LS | ) | |
| Washington, DC 20240 | ) | |
| (202) 452-5125, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| | ) | |
| ANADARKO PETROLEUM | ) | |
| CORPORATION, WARREN | ) | |
| RESOURCES, INC., DOUBLE EAGLE | ) | |
| PETROLEUM CO., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STATE OF WYOMING | ) | |
| | ) | |
| Defendant-Intervenors | ) | |

**CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO**
**STRIKE EXTRA-RECORD MATERIAL**

The Theodore Roosevelt Conservation Partnership ("TRCP") files this consolidated response in opposition to Defendants' motions to strike certain extra-record material offered by TRCP in support of its motion for summary judgment.[1]  TRCP has offered two principal forms of extra-record evidence in support of its claims:  1) declaratory evidence from Dr. Clait E. Braun ("Braun Declaration") and Dr. Rollin D. Sparrowe ("Sparrowe Declaration");[2] and 2) certain documents produced by State and Federal agencies, including Defendant Bureau of Land Management ("BLM").[3]  These materials fall well within recognized exceptions to the general rule that judicial review of claims brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), is confined strictly to the Administrative Record.  In addition, the Court may take judicial notice of many of the materials in dispute.  Indeed, in this instance, judicial review would be frustrated if the Court were precluded from reviewing the materials TRCP has offered in support of its motion for summary judgment.

## ARGUMENT

Although the focal point for judicial review of an administrative agency's action is the administrative record compiled by the defendant agency, a court may need to look outside the administrative record in certain instances to find the truth.  This Circuit has recognized at least eight such occasions ("*Esch* exceptions"):

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the

---

[1] This response addresses the arguments contained in both the Federal Defendants' and the Industry Defendant-Intervenors' motions to strike extra-record material (Dkt. Nos. 51 and 54, respectively).

[2] Exhibits A and B respectively, attached to TRCP's motion for summary judgment.

[3] Exhibits K – M attached to TRCP's motion for summary judgment and citations to official government websites (e.g., http://windeis.anl.gov/ containing the "Wind Energy EIS" and related materials compiled and disseminated by BLM).

agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

*Esch v. Yeutter*, 876 F.2d 976, 991 & 991 n. 166 (D.C. Cir. 1989); *Fund for Animals v. Williams,* 391 F. Supp. 2d 191, 197-98 (D.D.C. 2005) (citing *Esch*); *Carlton v. Babbitt*, 26 F. Supp. 2d 102, 108 (D.D.C. 1998); *National Trust for Historic Preservation v. Blanck*, 938 F. Supp. 908, 916 n. 10 (D.D.C. 1996).  Federal Defendants concede the existence of exceptions to the general rule of "record review".  Federal Defendants' Motion at 4.

TRCP relies on the second, fourth, and seventh exceptions enumerated above to support the Court's authority to review TRCP's proffered evidence, which is necessary for proper resolution of this matter as explained below.

I.      **EXTRA RECORD EVIDENCE IS NECESSARY TO DETERMINE WHETHER BLM CONSIDERED ALL RELEVANT FACTORS (EXCEPTION NO. 2).**

To determine whether an agency's actions (in this case the Atlantic Rim Record of Decision and supporting Environmental Impact Statement) are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" as required by § 706(2)(A) of the APA, a court must discern "whether the decision was based on a consideration of the relevant factors." *Overton Park v. Volpe*, 401 U.S. 402, 416 (1971).  The purpose of the Sparrowe Declaration, as well as TRCP's reference to certain BLM documents pertaining to wind energy development in the Atlantic Rim (collectively the "Wind Energy documents") is to identify for the Court relevant information that is not included in the Administrative Record, but that clearly should have been considered by the BLM at the time of its decision.  Consideration of extra-record evidence of this kind is permissible under the second *Esch* exception.

When employing this exception, a court focuses on the adequacy of the agency's consideration of the issues, as opposed to the ultimate merits of its decision.  *See Fund for*

3

*Animals*, 391 F. Supp. 2d at 199 n. 6 ("in considering the possibility of extra record review, 'the focus of judicial review is not on the wisdom of the agency's decision but on whether the process used by the agency considered all relevant factors.'") (internal citation omitted).  This court has previously allowed such evidence to be submitted.  *Southwest Ctr. for Biological Diversity v. Babbitt*, 131 F. Supp. 2d 1 (D.D.C. 2001) ("a court may consider evidence not included in the administrative record to ascertain whether the agency considered all factors relevant to its decision."); *Delano v. Roche*, 391 F. Supp. 2d 79, 88 (D.D.C. 2005) (permitting the administrative record to be supplemented with evidence relevant to the final decision).

Many other courts allow submission of extra-record evidence to show the agency's failure to consider relevant factors.  *See Sierra Club v. Leavitt*, 488 F.3d 904, 914 n. 16 (11th Cir. 2007) (plaintiffs free upon remand to proffer extra-record material "to determine whether the EPA considered all relevant factors in making its decision."); *United States v. Akzo Coatings, Inc.*, 949 F.2d 1409, 1428 (6th Cir. 1991) (collecting cases and holding that district court erred by refusing to consider extra-record evidence for purpose of determining the adequacy of the challenged decision); *Hiatt Grain v. Bergland*, 446 F. Supp. 457, 467 (D. Kan. 1978) ("How is the Court to determine whether all relevant factors were considered in the administrative record without knowing what factors outside the administrative record were not considered in the decisionmaking process?").

Of particular note is *Inland Empire Public Lands Council v. U.S. Forest Service,* 88 F.3d 754 (9th Cir. 1996), which also involved a challenge to an environmental impact statement, in that case prepared by the U.S. Forest Service.  Plaintiffs alleged the statement was insufficient and violated the National Environmental Policy Act ("NEPA") and the National Forest Management Act because it did not include a proper population viability analysis for certain

4

"sensitive" species living in the area.  Plaintiffs submitted expert testimony to identify factors

relevant to a proper population viability analysis that had been omitted from the Forest Service's

analysis.  The Forest Service objected to the district court's consideration of this extra-record

evidence, but the court allowed it, and the appellate court affirmed.  Citing *Asarco, Inc. v. EPA*,

616 F.2d 1153, 1160 (9th Cir. 1980), the court noted it would be impossible for the court to

determine whether the agency took all relevant factors into consideration unless the court "looks

outside the record to determine what matters the agency should have considered but did not."

*Inland Empire*, 88 F.3d at 760, n. 5.

This court can and should consider the Sparrowe Declaration and the Wind Energy

documents when determining whether BLM has considered all relevant factors.  "Otherwise, the

Court would have no way of discerning what relevant factors were missing from the analysis."

*Spiller v. Walker*, 2002 WL 1609722 at *7 (W.D. Tex. July 19, 2002).  The Sparrowe

Declaration demonstrates BLM failed to consider the ineffectiveness of the very adaptive

management techniques imposed in the ROD, as reflected at Wyoming's Pinedale Anticline

("Pinedale").  Sparrowe Decl. ¶¶ 4; 29-55.  The fact that BLM adopted adaptive management as

a monitoring and mitigation tool for the Atlantic Rim, a project involving similar activities and

impacting the same species, yet failed to consider that such mitigation techniques failed

elsewhere in Wyoming was unreasonable.  The concurrent failure of the mitigation model on

which BLM's ROD in this case is based, was particularly relevant to BLM's analysis, and failure

of the Pinedale Anticline adaptive management program was improperly ignored by BLM.

Likewise, the Court should also consider the Wind Energy documents to determine

whether BLM adequately addressed cumulative impacts in the EIS.  As noted in TRCP's motion

for summary judgment, BLM's Wind Energy EIS evaluates a "comprehensive program to

address wind energy development on BLM-administered lands." BLM identified "wind power estimates" for various locations throughout the Rawlins Field Office area, including specifically the Atlantic Rim Project Area ("ARPA"). That analysis indicated the ARPA's "wind resource level" was among the highest in the State of Wyoming. Even Defendant-Intervenor Anadarko agreed the cumulative impact of wind development should be evaluated in connection with other impacts on the ARPA.[4] TRCP's Motion for Summary Judgment, Exhibit M. Unless the Court considers the evidence offered by TRCP on these points, it will be unable to properly evaluate whether BLM sufficiently considered all relevant factors. *See Savantage Financial Services, Inc. v. United States*, 81 Fed. Cl. 300, 311 (Fed. Cl. 2008) ("It is precisely because DHS never examined these materials when making its decision that it becomes necessary to supplement the administrative record now-to evaluate whether DHS should have considered these materials.").

In *Fund for Animals*, this court allowed plaintiffs to introduce, among other things, a draft environmental impact statement, a biological assessment and a "strategic plan", all of which were deemed relevant to the question before the agency at the time of its decision, but which the agency stated it had not "considered" and therefore did not include in the administrative record. *Fund for Animals*, 391 F. Supp. 2d at 199. This court permitted plaintiffs to introduce the disputed materials because they were directly relevant to the agency's decision, were available to the agency at the time of its decision, and were materially adverse to that decision. *Id.* The Wind Energy EIS (produced by BLM) and the circumstances surrounding the failure of adaptive management in the Pinedale Anticline (concurrently managed by BLM) are

---

[4] Notably, the Industry Defendant-Intervenors do not dispute the fact that Anadarko made such comments, they simply ask the Court to ignore the fact.

no different.  *Compare Spiller*, 2002 WL 1609722 at *7 (permitting consideration of extra-record

declarations and expert testimony to establish deficiencies in NEPA analysis).

Federal Defendants admit BLM did not consider the materials offered by TRCP, and

thus, those materials are not part of the Administrative Record compiled by the agency in this

case.  Federal Defendants' Motion to Strike at 3.  However, that bare assertion does not preclude

this Court from considering extra-record material under a series of limited exceptions to the

general rule of record review, one of which permits consideration of such materials precisely to

determine whether the agency considered all relevant factors before making the decision on

review.  Defendants cannot shield relevant, adverse documents from the Court's view "simply by

claiming that the documents were not 'directly or indirectly' considered by the agency." *Fund*

*for Animals*, 391 F. Supp. 2d at 199; *see also Environmental Defense Fund, Inc. v. Blum*, 458 F.

Supp. 650, 661 (D.D.C. 1978) ("agency may not . . . skew the 'record' for review in its favor by

excluding from that 'record' information in its own files which has great pertinence to the

proceeding in question.").

## II.     EXTRA-RECORD, EXPERT EVIDENCE IS NECESSARY TO EXPLAIN THE COMPLEX BIOLOGICAL REQUIREMENTS OF THE SAGE GROUSE (EXCEPTION NO. 4).

Dr. Braun's Declaration, as well as Exhibit N to TRCP's Motion for Summary Judgment,

should be permitted under the exception allowing consideration of extra-record material to help

explain complex subjects, in this case the complex life-cycle requirements of the Greater sage

grouse and the impact of oil and gas development on this species.  *Esch*, 876 F.2d at 991; *Beach*

*Communications, Inc. v. F.C.C.*, 959 F.2d 975, 987 (D.C. Cir. 1992); *Carlton v. Babbitt*, 26 F.

Supp. 2d at 108.  *See also Akzo Coatings*, 949 F.2d at 1428 (courts may use extra-record

evidence as "background information to aid the court's understanding"); *Custer County v.*

*Garvey*, 256 F.3d 1024, 1028 (10th Cir. 2001) ("circumstances which warrant consideration of extra-record materials" include when "the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues") (citation omitted); *Sierra Club v. Babbitt*, 69 F. Supp. 2d 1202, 1209 (E.D. Cal. 1999) (extra-record declarations permissible and helpful in understanding factual complexities of the case); *Bunker Hill Co. v. EPA*, 572 F.2d 1286, 1292 (9th Cir. 1977) ("the courts are not straightjacketed to the original record in trying to make sense of complex technical testimony, which is often presented in administrative proceedings without ultimate review by nonexpert judges in mind."); *Sierra Club v. U.S. Forest Service*, 535 F. Supp. 2d 1268, 1291 (N.D. Ga. 2008) *citing Preserve Endangered Areas of Cobb's History v. United States Army BLM of Engin*eers, 87 F.3d 1242, 1246 n. 1 (11th Cir. 1996).

This court, in *Carlton*, allowed plaintiffs to supplement the administrative record with a declaration by an author explicitly disclaiming the agency's reading of his article, where that article provided the basis for the agency's erroneous scientific findings. *Carlton*, 26 F. Supp. 2d at 108. As in *Carlton*, Dr. Braun's declaration is offered to assist the Court in understanding the meaning of the sage grouse science before BLM at the time of its decision.[5] Dr. Braun, one of the world's leading experts on sage grouse biology and habitat requirements, is in fact the author of much of the relevant sage grouse material before BLM at the time of its decision. *See, e.g.,* Administrative Record ("AR") 5732, AR 6223, AR 6237 (listing Dr. Braun as an author or co-author). *See also* AR 5693, AR 5923, AR 6398, AR 6416, AR 7063, AR 7371 (citing Braun).

---

[5] Notably, Dr. Braun does not directly attack any decision of the BLM in this case. Dr. Braun's testimony merely summarizes in plain terms the state of the existing science on sage grouse biological requirements and responses. While a small portion of the information on which Dr. Braun relies post-dates BLM's actions, that material in turn relies on science before the agency in March 2007.

Dr. Braun's *Blueprint for Sage Grouse Conservation and Recovery* dated August 2006 and attached as Exhibit A to his Declaration, was presented to BLM as a comment on the Atlantic Rim Environmental Impact Statement.  AR 9941-10031.[6]  Although Dr. Braun does not opine on BLM's performance in this particular case, the Court may rely on Dr. Braun's expertise to determine for itself whether BLM's conclusions concerning the effectiveness of grouse mitigation measures are supported by the record (*e.g.*, whther BLM has reasonably employed a ¼ mile "no surface occupancy" buffer to protect leks when all available data show such buffers are not effective).

Dr. Braun's Declaration will help the Court understand the cumulative body of science on sage grouse and, thus, occupy a far better position to judge whether BLM's decisions in light of that science were reasonable or were arbitrary and capricious.  Biological processes, by their very nature, are among the most complex and difficult to decipher, even for experts in the field.  Indeed, even Dr. Braun cannot point to just one source that articulates completely and exclusively the needs of sage grouse and the impact of oil and gas development on that species.  Braun Declaration ¶ 1.  Testimony from Dr. Braun, an expert who has authored over sixty-five articles on sage grouse, and more than fifty technical abstracts on sage grouse, Braun Declaration ¶ 4, and who has spent decades researching the habitat needs and biological requirements of sage grouse, Braun Declaration ¶ 5, will provide an invaluable foundation to aid the Court's understanding of the needs of sage grouse and their response to oil and gas development.   Only with such a complete understanding, will the Court will be fully equipped to judge the reasonableness of BLM's actions.

---

[6] BLM incorrectly asserts that "neither [Sparrowe nor Braun] offered comments on the proposed action", Motion to Strike at p. 2, and the Industry Defendant-Intervenor wrongly argue Dr. Braun "cites to no evidence in the administrative record."  Industry Defendant-Intervenors motion at 8.

In *Holy Cross v. U.S. Army Corps of Engineers*, 455 F. Supp. 2d 532 (E.D. La. 2006), the court allowed plaintiffs challenging a NEPA analysis to introduce expert testimony like that of Dr. Braun's to illuminate the nature of the issues involved in the NEPA inquiry regarding lock modernization efforts in the wake of Hurricane Katrina. That court explained it would review the extra-record testimony because it represented a reality the federal agency simply would not recognize:

> The other extra-record material, the declaration of Mr. Barry Kohl, sheds light on the real issue in this case. The EIS was completed in 1997 and the details of the Corps' decision to modernize the Industrial Canal lock were set forth in the 1998 ROD. However, the effects of Hurricane Katrina have exposed the inadequacy of the Corps' planning and analysis. Moreover, in the year since Hurricane Katrina, local circumstances have drastically changed: the future of the MR-GO is in doubt; the location, height, and significance of the levees are being re-evaluated; and priorities are shifting from the transportation needs of the community to the restoration of basic infrastructure. All of these post-Katrina developments expose the insufficiency of the present EIS. *To ignore these facts is to ignore reality*. For the law to have any credibility or respect, it must be grounded in reality.

(Emphasis supplied.) As in *Holy Cross*, Dr. Braun's testimony demonstrates a reality about the impact of oil and gas development BLM has chosen to ignore.

This court may review extra-record material needed to understand the issues before it by providing context relevant to the decision under review. *Pettiford v. Secretary of Navy*, 2008 WL 724017, *1 (March 17, D.D.C. 2008). Particularly, "in highly technical areas," courts may consider "substantive evidence going to the merits of the agency's action where such evidence is necessary as background to determine the sufficiency of the agency's consideration." *Love v. Thomas*, 858 F.2d 1347, 1356 (9th Cir. 1988), *cert. denied sub nom. AFL-CIO v. Love*, 490 U.S. 1035 (1989). At base, the Braun Declaration is explanatory in nature, based upon a review of several materials, many of which are included in the Administrative Record. The testimony will aid the Court in understanding and interpreting the meaning and significance of the issues before the Court on summary judgment. *See Kunaknana v. Clark,* 742 F.2d 1145, 1149 (9th Cir. 1984)

(permitting extra-record material that was explanatory in nature). This Court's consideration of the Braun Declaration falls well within the fourth *Esch* exception.

## III.    EXTRA-RECORD EVIDENCE IS PROPERLY RECEIVED IN CASES ARISING UNDER THE NATIONAL ENVIRONMENTAL POLICY ACT (EXCEPTION NO. 7).

"It will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered, but did not." *Asarco Inc.*, 616 F.2d at 1160; *see also, e.g., Citizens for Alternatives to Radioactive Dumping v. U.S. Dept. of Energy*, 485 F.3d 1091, 1096 (10th Cir. 2007). This is especially true in cases, like this, in which a plaintiff alleges the agency failed to comply with its obligations under NEPA, where "a primary function of the Court is to insure that the information available to the decision maker includes an adequate discussion of environmental effects and alternatives, which can sometimes be determined only by looking outside the administrative record to see what the agency may have ignored." *County of Suffolk v. Secretary of Interior*, 562 F.2d 1368, 1384 (2d Cir. 1977). "In dealing with scientific and technical evidence, extra record evidence 'may illuminate whether an [environmental impact statement] has neglected to mention a serious environmental consequence, failed adequately to discuss some reasonable alternative, or swept other stubborn problems or serious criticism . . . under the rug." *Citizens for Alternatives to Radioactive Dumping v. United States Dep't of Energy*, 485 F.3d 1091 (10th Cir. 2007) *quoting Lee v. United States Air Force*, 354 F.3d 1229, 1242 (10th Cir. 2004).

Thus, in NEPA cases, deviation from the "record review" rule is frequently warranted. *Fund for Animals*, 391 F. Supp.2d at 199. *See also, Sierra Club v. Peterson*, 185 F.3d 349, 370 (5th Cir. 1999) (recognizing that courts often accept extra-record evidence in NEPA cases),

11

*vacated on other grounds on reh'g*, 228 F.3d 559 (5th Cir. 2000); *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (courts accept extra-record evidence "with more frequency in the review of agency NEPA decisions than in the review of other agency decisions"); *Webb v. Gorsuch*, 699 F.2d 157, 159 n.2 (4th Cir. 1983) ("courts generally have been willing to look outside the record when assessing the adequacy of an EIS or a determination that no EIS is necessary").

The basis for a broader acceptance of extra-record material in NEPA cases is consistent with NEPA's purpose:

> NEPA imposes a duty on federal agencies to compile a comprehensive analysis of the potential environmental impacts of its proposed action, and review of whether the agency's analysis has satisfied this duty often requires a court to look at evidence outside the administrative record. To limit the judicial inquiry regarding the completeness of the agency record to that record would, in some circumstances, make judicial review meaningless and eviscerate the very purposes of NEPA. The omission of technical scientific information is often not obvious from the record itself, and a court may therefore need a plaintiff's aid in calling such omissions to its attention. Thus, we have held that the consideration of extra-record evidence may be appropriate in the NEPA context to enable a reviewing court to determine that the information available to the decisionmaker included a complete discussion of environmental effects and alternatives.

*Hoffman*, 132 F.3d at 14-15.

To determine whether the BLM took a "hard look" at the proposed Atlantic Rim development and its effect on the natural and human environment, it is necessary to understand the details of BLM's analysis. The testimony of Drs. Sparrowe and Braun, as well as the various State and Federal documents cited by TRCP, speak to the improperly narrow scope and overly optimistic nature of BLM's analysis and demonstrate BLM neglected to evaluate significant issues in the ROD, including a massive wind energy corridor running directly through the Atlantic Rim and the concurrent failure of adaptive management in the Pinedale Anticline. In sum, this material is offered to demonstrate BLM's "course of inquiry" under NEPA was

insufficient. *Compare Izaak Walton League of America v. Marsh*, 655 F.2d 346, 369 n. 56 (D.C. Cir. 1981) ("Allegations that an impact statement fails to consider serious environmental consequences or realistic alternatives raise issues sufficiently important to warrant introduction of new evidence in the District Court.").

Because this is, in part, a NEPA case, in which the Court must review the adequacy of BLM's analysis of environmental effects and alternatives, review of extra-record material bearing directly on the scope of that analysis is entirely appropriate to ensure BLM satisfied its statutory duties.

## IV. **THE COURT MAY PROPERLY TAKE JUDICIAL NOTICE OF GOVERNMENT PUBLICATIONS SUCH AS THE WIND ENERGY EIS, COMMENTS ASSEMBLED AND PUBLISHED BY BLM, AND JUDICIAL AND ADMINISTRATIVE FILINGS.**

Defendants ask this Court to strike references to various governmental publications, particularly the Wind Energy EIS and comments made by Defendant-Intervenor Anadarko supporting TRCP's argument that BLM failed to evaluate the cumulative impacts of wind energy and oil and gas development in the ARPA. *See* Memorandum in Support of Anadarko Petroleum Corporation, Warren Resources, Inc. and Double Eagle Petroleum Corporation's Motion to Strike at 2, n.1.[7] A reviewing court, however, may take judicial notice of information contained in certain government documents, even in a record review case such as this one. *See Pueblo of*

---

[7] The Industry Defendant-Intervenors also take exception to TRCP's reference to certain peer-reviewed scientific publications such as the Journal of Wildlife Management. Industry Defendant-Intervenors do not identify the conclusions they dispute within these documents, but regardless, the court may treat such material as reference texts. *Complaint of Compagnie Generale Transatlantique*, 392 F. Supp. 973 (D.C. Puerto Rico 1975); *Owens-Illinois Glass Co. v. American Coastal Lines, Inc.*, 222 F. Supp. 923, 927 (S.D.N.Y. 1963). *Compare Carlton*, 26 F. Supp. 2d at 107 (permitting consideration of multiple materials publicly available at the time of the agency's decision, including various scientific papers and articles concerning the relevant issues).

*Sandia v. United States*, 50 F.3d 856, 861 n. 6 (10th Cir. 1995); *Clappier v. Flynn*, 605 F.2d 519, 535 (10th Cir. 1979).  *See also American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045 (9th Cir. 1995) (taking notice of general pronouncements in two State Department publications and an Executive Order); *Barron v. Reich*, 13 F.3d 1370 (9th Cir. 1994) (Court may take notice of "records and reports of administrative bodies"); *Jackson v. Curtis* 2008 WL 1808373 (E.D. Mich. April 21, 2008) *citing United States ex. rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) ("Public records and government documents, including those available from reliable sources on the Internet, are subject to judicial notice."); *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 978 (9th Cir. 2007): *Zappier v. Sun Life Assur. Co. of Canada*, 2006 WL 2621110 (S.D.N.Y., Aug. 10 2006); *Canales Martinez v. Dow Chemical Co.*, 219 F. Supp. 2d 719 (E.D. La. 2002) ("[T]he Court is authorized to take judicial notice of official government publications."); *Lising v. INS*, 124 F.3d 996 (9th Cir. 1997) (court is not precluded from taking judicial notice of an agency's own records).

A lengthy discussion of this issue appears in *Cactus Corner, LLC v. U.S. Dept. of Agriculture*, 346 F. Supp. 2d 1075 (E.D. Cal. 2004), in which the court ultimately took judicial notice of the existence and authenticity of certain public and quasi-public documents, however, the Court did not take judicial notice of their contents to the extent they were in dispute.  In this case, it is unclear precisely what Defendants actually dispute (or credibly could dispute) about the Wind Energy EIS or Anadarko's comments thereon.  However, at a minimum, the Court may take judicial notice of the Wind Energy EIS generally and excerpts therefrom.  In response to Federal Defendants' complaint that TRCP has failed to "identify facts it would like the Court to take judicial notice of," TRCP specifically requests the Court take judicial notice of the following facts derived from the Wind Energy documents:

- BLM prepared the Wind Energy EIS and was analyzing wind energy potential in the ARPA as it was preparing the Atlantic Rim Record of Decision.
- The Wind Energy EIS indicates that the ARPA's "wind resource level" was among the highest in the Rawlins planning area.
- The potential of wind energy development to adversely impact sage grouse and to disrupt migratory behavior of big game animals like mule deer, elk and pronghorn antelope was specifically identified in the Wind Energy EIS.
- Defendant-Intervenor Andarko called for the Wind Energy EIS to address "[c]umulative impacts (visual, wildlife, etc.) from wind farm projects and the potential impact on the ability to develop resources on adjacent lands."

In addition, the Court may take judicial notice of Exhibit N to TRCP's motion for summary judgment (Wyoming Game & Fish Department Memorandum entitled *Multi-State Sage-Grouse Coordination and Research-based Recommendations*).[8] The Court may take judicial notice of the fact that the Memorandum states the Western Association of Fish and Wildlife Agencies has concluded that the best available science indicates existing sage grouse management restrictions employed by BLM are ineffective. *Seifert v. Winter*, ___ F. Supp. 2d ___ 2008 WL 879029, *6 n. 5 (D.D.C. April 3, 2008) *citing Ctr. for Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996), *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005), *Dulaney v. United States*, 472 F. Supp. 2d 1085, 1086 (S.D. Ill. 2006), and *United States ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) (all allowing consideration of extra-record material, including records of State agencies).

Finally, Industry Defendant-Intervenors ask the Court to disregard sworn declarations BLM filed in the parallel case of *NRDC v. Kempthorne* also pending in this Court, which simply describe the manner in which development on the Sun Dog and Catalina PODs was authorized

---

[8] Notably, this document, in turn, cites materials contained in the Administrative Record (AR 7063, 7357), but also cites many more materials that are not part of the Administrative Record, but should have been considered by BLM since they predated the ROD. *See* TRCP's Motion for Summary Judgment, Exhibit N (Literature Cited) (identifying multiple additional, and more current, publications from authors cited in the Administrative Record, including Holloran, Naugle and Braun).

relative to the location of sage grouse leks and various big-game migration corridors. Presumably, they also challenge TRCP's citation to sworn statements made by BLM before the Interior Board of Land Appeals (and repeated in a written, reported decision of the Board) concerning the non-scientific origin of current sage grouse management techniques. These arguments lack merit. The Court may take judicial notice of its own records and of other judicial and administrative bodies. *Veg-Mix, Inc. v. United States Dep't of Agriculture*, 832 F.2d 601, 607 (D.C. Cir. 1987); *Liberty Lobby, Inc. v. Dow Jones & Co.*, Inc., 838 F.2d 1287, 1300, n. 8 (D.C. Cir. 1988).

## V.  **TRCP HAS PROPERLY OFFERED THE EXTRA-RECORD EVIDENCE.**

### A.  **The Braun and Sparrowe Declarations Do Not Constitute Improper "Opinion Testimony".**

While Federal Defendants do not directly contest the qualifications of Drs. Sparrowe or Braun, the Industry Defendant-Intervenors mount a cursory challenge. Expert testimony, however, is admissible if the witness is qualified and his testimony is capable of assisting the trier of fact. *Coleman v. Parkline Corp.*, 844 F.2d 863, 865-66 (D.C. Cir. 1988). "The qualification of a particular witness to testify as an expert is largely within the domain of the trial judge." *Jenkins v. United States*, 307 F.2d 637, 645 n. 19 (D.C. Cir. 1962) (*en banc*). *See also Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 568 (D.C. Cir. 1993) (court has broad discretion regarding the admission or exclusion of expert testimony); *United States v. Hall*, 969 F.2d 1102, 1109-10 (D.C. Cir. 1992) citing *Burlington Northern, Inc. v. Boxberger*, 529 F.2d 284, 286-87 (9th Cir. 1975) (admission of expert testimony constitutes an abuse of discretion only when that testimony qualifies as "rampant speculation").

An expert may be qualified by personal and professional experience in the relevant field. *See Coleman*, 844 F.2d at 866 (describing experience of expert, including professional degree

16

and accident investigation experience); *U.S. v. Ramsey*, 165 F.3d 980 (D.C. Cir. 1999); *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004); *United States v. Butler*, 102 F.3d 1191, 1199 (11th Cir. 1997) (expert qualified by work experience in the field); *Mullins v. Crowell*, 228 F.3d 1305, 1317, n. 20 (11th Cir. 2000) (same); *United States v. Wallace*, 889 F.2d 580, 584 (5th Cir. 1989) (witness qualified on basis of "lengthy research, training, and experience"). Drs. Braun and Sparrowe are qualified by both training and experience.

Dr. Sparrowe possesses over 40 years of experience in the field of wildlife management at both the State and Federal level. Sparrowe Declaration ¶ 5 and *curriculum vitae*. He holds three degrees in wildlife biology and management, including a Ph.D. in Wildlife Ecology. Sparrowe Declaration ¶ 6. Approximately 22 of his 40 years were spent with the U.S. Fish and Wildlife Service working as, among other things, the Chief of the Division of Wildlife Research and, later, the Chief of the Office of Migratory Bird Management. Sparrowe Declaration ¶¶ 7 - 8. He has published multiple scientific papers concerning wildlife management, Sparrowe Declaration ¶ 13, and he has received multiple awards for his distinguished public service. Sparrowe Declaration ¶¶ 9, 12. Dr. Sparrowe also possesses extensive personal and professional experience with wildlife management programs, including adaptive management regimes like that at issue in this case. Sparrowe Declaration ¶¶ 15-19.

Dr. Braun is one of the world's few experts in the field of sage grouse biology, whose work is referenced directly and indirectly throughout the Administrative Record produced in this case. *See, e.g.,* AR 5732, AR 6223, AR 6237 (listing Dr. Braun as an author or co-author). *See also* AR 5693, AR 5923, AR 6398, AR 6416, AR 7063, AR 7371 (*citing* Braun) and Braun Declaration ¶ 6 for a list of additional relevant publications. Dr. Braun holds three degrees, including a Ph.D. in Wildlife Biology. Braun Declaration ¶ 2. He spent 30 years working with

the Colorado Division of Wildlife, acting among other things as its Avian Research Program Manager. Braun Declaration ¶ 3. His research has focused primarily on sage grouse since 1965. Braun Declaration ¶ 4.

The expert testimony offered by Drs. Sparrowe and Braun is unquestionably capable of assisting the court in determining the true nature of adaptive management (Sparrowe Declaration ¶¶ 20-28) and the scientific community's conclusions concerning the impact of oil and gas development on sage grouse (Braun Declaration ¶¶ 9-21). Accordingly, the expert opinions of Drs. Braun and Sparrowe are fully admissible as such.

### B.    TRCP Has Not "Waived" Its Ability to Offer Extra-record Evidence.

Defendants assert TRCP somehow waived its ability to rely on extra-record evidence by: 1) Not challenging the completeness or content of the Administrative Record; and 2) failing to bring the evidence to BLM's attention at an earlier date. *See, e.g.*, Federal Defendants' Motion to Strike at p. 2. Defendants' first argument fails to appreciate the distinction between record supplementation and extra-record review. Defendants' second argument overstates TRCP's obligation under NEPA, requiring TRCP to perform BLM's work for it.

First, TRCP did its level-best to avoid a protracted dispute about the content of the Administrative Record, working in good-faith with the parties to ensure that all material *actually considered* by BLM was included in the Administrative Record. However, upon agreeing to supplement the record with certain limited documentation, Federal Defendants represented to TRCP that *nothing more was considered by BLM*. TRCP accepted that representation at face value. Indeed, in their motion, Federal Defendants concede that the evidence TRCP has offered was not considered by BLM in making its decision. Accordingly, such information is not properly contained within the Administrative Record. And that is the point. TRCP has

submitted certain extra-record material, including the Sparrowe Declaration and the Wind

Energy documents, precisely to demonstrate what *should have been considered*.[9]

Ultimately, as in *Pacific Shores Subdivision, California Water Dist. v. U.S. Army Corps

of Engineers*, 448 F. Supp. 2d 1, 5-6 (D.D.C. 2006):

> [I]t appears Defendants appear to have conflated the act of supplementing the
> record with permitting consideration of extra-record evidence. For a court to
> supplement the record, the moving party must rebut the presumption of
> administrative regularity and show that the documents to be included were before
> the agency decisionmaker. On the other hand, for a court to review extra-record
> evidence, the moving party must prove applicable one of the eight recognized
> exceptions to the general prohibition against extra-record review. *See Fund for
> Animals*, 391 F. Supp. 2d at 197-98 (citing *Esch v. Yeutter*, 876 F.2d 976, 991
> (D.C. Cir. 1989) (identifying the eight exceptions)). Consideration of extra-
> record information is appropriate when simply reviewing the administrative
> record is not enough to resolve the case. *Esch*, 876 F.2d at 991. For example, in
> cases arising under the National Environmental Policy Act, a court may need
> extra-record review to evaluate whether an agency's analysis of potential
> environmental impacts of a proposed action was arbitrary and capricious. *See
> Amfac Resorts, LLC v. DOI*, 143 F. Supp. 2d 7, 14-15 (D.D.C. 2001) (extra record
> review "enable[s] a reviewing court to determine that the information available to
> the decisionmaker included a complete discussion of environmental effects and
> alternatives"); *see also, Sabine River Auth. v. DOI*, 951 F.2d 669 (5th Cir. 1992)
> (court must look outside the administrative record to determine whether the
> agency adequately considered the environmental effects of a particular project);
> *Suffolk County v. Sec. of Interior*, 562 F.2d 1368, 1384 (2nd Cir. 1977) (same).

"If the non-record information indicates a failure to consider all relevant factors, remand to the

agency for consideration of that information may be in order." *Southwest Center for Biological

Diversity*, 131 F. Supp. 2d at 8 *citing Camp v. Pitts*, 411 U.S. 138 (1973).

Second, Federal Defendants argue TRCP may not offer the testimony of Drs. Braun or

Sparrowe because it was not presented to BLM before the ROD was signed. Federal

Defendants' Motion to Strike at 2. Federal Defendants overstate their case. As discussed herein,

---

[9] As already indicated, the Braun Declaration is offered largely to summarize the current state of
science concerning sage grouse, much of which already is contained in the Administrative
Record.

much of the information relied on by Dr. Braun, including the *Blueprint for Sage Grouse Conservation and Recovery* (Braun Declaration, Exhibit A) was, in fact, before BLM at the time of its decision.    That said, Industry Defendant-Intervenors' citations to cases like *R.I. Consumers' Council and Dov. Of Pub. Utils & Carriers v. FPC*, 504 F.2d 203 (D.C. Cir. 1974)[10] and *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519 (1978) are entirely misplaced.[11]

Although Defendants may criticize TRCP for a lack of precision in its comments on the EIS, the issues presented in this matter by TRCP were placed before the agency.  AR 10262. And it surely cannot be said that BLM was somehow unaware of the issues presented by TRCP's extra-record evidence – namely the impacts of oil and gas development on mule deer and sage grouse.  Indeed, as early as 2000, BLM identified "potential impacts to wildlife habitats within the analysis area, including big game, sage grouse, and raptors" as key concerns.  AR 7454.  *See also* AR 9757, AR 9872, AR 9941, AR 10057.  It was not incumbent on TRCP to anticipate BLM's misapplication of, or failure to consider, relevant information before the agency. *Compare Sierra Club v. Bosworth*, 199 F. Supp. 2d 971, 989 (N.D. Cal. 2002) ("The Forest Service cannot argue, therefore, that it was not placed on notice of plaintiffs' objections during the notice and comment period. In addition, the Forest Service has a duty to address cumulative action regardless of whether plaintiffs complain of violations.") (citations omitted).

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Strike should be denied.

---

[10] Industry Defendant-Intervenors can point to no statutory exhaustion requirement comparable to that at issue in *R.I. Consumers*.
[11] *Southwest Center for Biological Diversity v. Babbitt*, 131 F. Supp. 2d 1 (D.D.C. 2001) is also inapposite, as TRCP clearly was not the petitioner for action in the instant case.

Respectfully submitted this 23rd day of June, 2008.

/s/ **Donald G. Blankenau**

D.C. Bar No. ND0003
Thomas R. Wilmoth
Nebraska Bar No. 22518
HUSCH BLACKWELL SANDERS LLP
206 South 13th Street, Suite 1400
Lincoln, NE  68508-2019
T: (402) 458-1500
F: (402) 458-1510
don.blankenau@huschblackwell.com
tom.wilmoth@huschblackwell.com

*Counsel for Theodore Roosevelt
Conservation Partnership*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2008, I caused to be electronically filed the foregoing CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO STRIKE EXTRA-RECORD MATERIAL with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Donald G. Blankenau**
don.blankenau@huschblackwell.com; sharon.marburger@huschblackwell.com

**John Scudder Burbridge**
jburb1@state.wy.us

**Lori Caramanian**
lori.caramanian@usdoj.gov; susan.middagh@usdoj.gov; efile_nrs.enrd@usdoj.gov; lori.montano@usdoj.gov

**Jay A. Jerde**
jjerde@state.wy.us

**Steven Michael Kupka**
nancilee.holland@huschblackwell.com

**Robert Charles Mathes**
rmathes@bjorklindley.com; lvanderveer@bjorklindley.com; kfuller@bjorklindley.com

**Teresa Rachel Nelson**
tnelso@state.wy.us; cjohns1@state.wy.us

**Michael B. Wigmore**
michael.wigmore@bingham.com; s.franco@bingham.com

**David James Willms**
dwillm@state.wy.us; kmcmul@state.wy.us

**Thomas R. Wilmoth**
tom.wilmoth@huschblackwell.com; sharon.marburger@huschblackwell.com

/s/ *Donald G. Blankenau*
D.C. Bar No. ND0003
Thomas R. Wilmoth
Nebraska Bar No. 22518
HUSCH BLACKWELL SANDERS LLP
206 South 13th Street, Suite 1400
Lincoln, NE  68508-2019
T: (402) 458-1500
F: (402) 458-1510
don.blankenau@huschblackwell.com
tom.wilmoth@huschblackwell.com

*Counsel for Theodore Roosevelt
    Conservation Partnership*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THEODORE ROOSEVELT | ) |
| CONSERVATION PARTNERSHIP | ) |
| 555 Eleventh St. N.W., 6th Floor | ) |
| Washington, DC 20004 | ) |
| (202) 654-4600, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DIRK KEMPTHORNE, in his official | ) |
| capacity as the Secretary of the United States | ) |
| Department of the Interior | ) |
| 1849 C Street, N.W. | ) |
| Washington, DC 20240 | ) |
| (202) 208-3100, | ) |
| | ) |
| and | ) |
| | ) |
| UNITED STATES BUREAU OF LAND | ) |
| MANAGEMENT | ) |
| 1849 C Street, Room 406-LS | ) |
| Washington, DC 20240 | ) |
| (202) 452-5125, | ) |
| | ) |
| Defendants. | ) |
| ─────────────────────── | ) |
| | ) |
| ANADARKO PETROLEUM | ) |
| CORPORATION, WARREN RESOURCES, | ) |
| INC., DOUBLE EAGLE PETROLEUM | ) |
| CO., | ) |
| | ) |
| and | ) |
| | ) |
| STATE OF WYOMING, | ) |
| | ) |
| Defendant-Intervenors. | ) |
| ─────────────────────── | ) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Intervenor-Defendants Anadarko Petroleum Corporation, Warren Resources, Inc. and Double Eagle Petroleum Co.'s Motion to Strike Extra-Record Evidence Relied on in Support of Plaintiff Theodore Roosevelt Conservation Partnership's Motion for Summary Judgment (Dkt. 54), and Plaintiff's response thereto:

IT IS HEREBY ORDERED that the Motion is DENIED.

Dated this _____ day of _____, 2008.

_____
The Honorable Richard J. Leon
U.S. District Court Judge