**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| THEODORE ROOSEVELT CONSERVATION PARTNERSHIP, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 1:07-cv-01486-RJL |
| DIRK KEMPTHORNE, in his official capacity as the Secretary of the United States Department of the Interior, and UNITED STATES BUREAU OF LAND MANAGEMENT, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| ANADARKO PETROLEUM CORPORATION, WARREN RESOURCES, INC., and DOUBLE EAGLE PETROLEUM CO., and STATE OF WYOMING, | ) ) ) ) ) ) | |
| Defendant-Intervenors. | ) ) ) | |

**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE**

Federal Defendants moved to strike several extra-record exhibits attached to Plaintiff's Motion for Summary Judgment: Exhibits A and B, the declarations of Clait Braun and Rollin Sparrowe, including attachments, and Exhibits K-N. Although now Plaintiff recognizes that the focal point for this Court's review of the challenged action "is the administrative record" compiled by the Bureau of Land Management," and that the Court may consider extra-record evidence only in limited circumstances, Plfs. Response to Motion to Strike at 2, it failed to explain in the first instance why the Court should apply one of the exceptions. Instead, it prejudiced Federal

1

Defendants by simply attaching the documents to their motion for summary judgment, and heavily relying on the improperly submitted evidence in their brief. Now, Plaintiff belatedly argues that the Court should consider its extra-record evidence because this is a case arising under the National Environmental Policy Act (NEPA), because the documents supposedly show that the agency failed to consider relevant factors and because the case is so complex that the Court needs explanatory declarations in order to understand the issues. Plaintiff's arguments are without merit. As we explain below, in order to invoke an exception to the rule limiting review to the record, Plaintiff has the burden of first establishing that the record is so deficient that it prevents the Court from conducting a review of the agency's decision, or that there is evidence of bad faith or improper behavior by the agency. Plaintiff ignores this pre-requisite, and its argument that extra record evidence is needed fails.

## II. ARGUMENT

Plaintiff seeks to excuse its failure to participate fully in the administrative process by arguing that the extra-record material that it belatedly offers is needed to assist the Court in making its decision. Although Plaintiff makes a weak--and unsubstantiated--effort to distinguish <u>Vermont Yankee Nuclear Power Corp. v. NRDC, Inc.</u>, 435 U.S. 519 (1978), the Supreme Court's admonition in that case is directly relevant. Plfs. Response to Motion to Strike at 20. Plaintiff claims that it should not be penalized for a "lack of precision" in its comments, and it had no obligation to alert the agency to its concerns. <u>Id.</u> But, this argument is contrary to <u>Vermont Yankee</u>, where the Court stated that "administrative proceedings should not be a game or a forum to engage in unjustified obstructionism by making cryptic and obscure reference to matters that 'ought to be' considered and then, after failing to do more to bring the matter to the agency's attention, seeking to have that

agency determination vacated on the ground that the agency failed to consider matters 'forcefully presented.'" Id. at 553-54.  When Plaintiff submitted comments on the Final EIS (it did not participate in scoping or comment on the Draft EIS), it made no mention of BLM's supposed failure to evaluate the cumulative impacts of wind energy in connection with the proposed action. AR 10262-66.  Had it done so, BLM could have explained in detail that Plaintiff's claim was without merit, because no proposals for development of wind energy in the project area exist.  Likewise, had Plaintiff put the Sparrowe or Braun declarations before the agency during the public process, BLM could have given their comments meaningful consideration.  BLM should not be penalized for Plaintiff's failure to fully participate in the process.  The Court should strike its extra record evidence.

A.      **Under the APA, the Court's Review of BLM's Decision Is Restricted to the Administrative Record**

Plaintiff admits, as it must, that "the focal point for judicial review of an agency's administrative action is the administrative record" compiled by the agency.  Plfs. Response to Motion to Strike at 2.  Nevertheless, it asks the Court to disregard that limitation, arguing that three exceptions to the rule limiting review to the record set forth in the D.C. Circuit's decision in Esch v. Yuetter, 876 F.2d 976 (D.C. Cir. 1989) apply here.  Id. at 2-3.  Plaintiff also contends that the extra-record evidence it cites is permissible in this case because the Court needs "to look outside the administrative record in certain instances to find the truth."  Plfs. Response to Motion to Strike at 2.

Plaintiff's argument ignores the proper role of the Court in an APA record review case.  This Court is charged with determining whether BLM's decision was arbitrary and capricious, an abuse of discretion, or contrary to law.  5 U.S.C. § 706(2)(A).  If the Court finds the record does not

provide an adequate basis to support BLM's decision, then the appropriate course is to remand the matter to BLM for further consideration. See Camp v. Pitts, 411 U.S. 138, 143 (1973). The role of the Court is not to "find the truth," but to ascertain whether the agency's decision was arbitrary or capricious. The D.C. Circuit's decision in IMS, P.C. v. Alvarez, 129 F.3d 618 (D.C. Cir. 1997) is instructive. In that case, the plaintiff submitted four affidavits to the district court, contending that the affidavits could be considered under "'various exceptions' which permit supplementation of the record." Id. at 624. The plaintiff also argued that the affidavits should be considered because "they merely elaborate[] on details already included in the record." Id. The court of appeals upheld the district court's decision to strike the declarations, finding that the plaintiffs had "not demonstrated that the agency failed to examine all relevant factors or to adequately explain its grounds for decision" or that there was a showing of bad faith or improper behavior by the agency. Id. It concluded

> The affidavits contain information that should have been submitted to the agency before this dispute reached the courts. To allow the affidavits to be considered now would be to permit *ex post* supplementation of the record, which is not consistent with the prevailing standards of agency review.

Id. As Judge Urbina summarized the case law in Fund for Animals v. Williams, 391 F. Supp. 2d 191, 196 (D.D.C. 2005), "[t]o ensure fair review of an agency action, therefore, the court 'should have before it neither more nor less information than did the agency when it made its decision.'" Quoting IMS, P.C. v. Alvarez, 129 F.3d at 623 (citing Walter O. Boswell Mem'l Hosp. v. Alvarez, 749 F.2d 788, 792 (D.C. Cir. 1984)). The court explained that reviewing more information than the agency had before it "risks our requiring administrators to be prescient. . ." Id. As the familiar rule states, "'[t]he task of the reviewing court is to apply the appropriate APA standard of review . . . based on *the record the agency presents* to the reviewing court.'" Id. at 197. (emphasis district

court's) (quoting <u>San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n</u>, 751 F.2d 1287, 1324 (D.C. Cir. 1984)).

Thus, as Judge Urbina explained in <u>Fund for Animals v. Williams</u>, 391 F. Supp. at 198, "[b]efore invoking an exception, however, the plaintiff must demonstrate bad faith or improper behavior on the part of the agency, or that, 'the record is so bare that it prevents effective judicial review.'" Quoting <u>Fund for Animals v. Williams</u>, 245 F. Supp. 2d 49, 57-58 (D.D.C. 2003) (citing <u>Commercial Drapery Contractors v. United States</u>, 133 F.3d 1, 7 (D.C. Cir. 1998)). Plaintiff's request that the Court consider its extra-record evidence is fatally flawed, because it has made no effort to show that the record is so bare that the court cannot reach a decision.

Plaintiff submits the Sparrowe declaration ostensibly for the purpose of showing that BLM supposedly "failed to consider the ineffectiveness of the very adaptive management techniques imposed on the ROD." Plfs. Response to Motion to Strike at 5. And, it offers the Braun declaration to "summarize in plain terms the state of the existing science on sage grouse biological requirements and responses," including information that post dates the decision. <u>Id.</u> at 8, n.5. It likewise improperly relies on several extra-record documents purportedly showing that BLM failed to consider the cumulative impacts of wind energy. Although Plaintiff cites <u>Fund for Animals</u> in support of its argument that the Court should consider its improperly submitted evidence, it inexplicably ignores the first part of the test as set forth in that case. Instead, Plaintiff attempts to circumvent the rule limiting review to the record by claiming that BLM has confused the distinction between extra record review and supplementation of the administrative record.[1] Plfs. Response to

_____

[1] Plaintiff relies on a lengthy block quote from <u>Pacific Shores Subdivision v. U.S. Army Corps Eng'rs,</u> 448 F. Supp. 2d 1, 5-6 (D.D.C. 2006) in support of this argument. Plfs. Motion to Strike at 19. In that case, Magistrate Judge Facciola stated that there was a distinction between supplementing the record and considering extra-record evidence. Interpreting <u>Fund for Animals,</u>

Motion to Strike at 18.  Specifically, Plaintiff claims that argument we made in our opening brief,

that Plaintiff waived any objections to the "content or completeness of the administrative record,"

Def. Motion to Strike at 2, is not relevant to the question of whether the Court should permit it to

offer extra record evidence.  But, the completeness of the record is directly relevant because it goes

to the question of whether the record "is so bare that it prevents effective judicial review."  Here,

Plaintiff waived objections to the "content or completeness of the record."  Because it has not shown

(and could not show) that there was bad faith or improper behavior by the agency or that the record

is so bare that it prevents effective judicial review, the Court need go no further.  Because Plaintiff

has not met its initial burden, the Court should grant Federal Defendants' motion to strike.

## B.    The <u>Esch</u> Exceptions Do Not Apply

Citing <u>Esch v. Yeutter</u>, 876 F.2d 976 (D.C. Cir. 1989), Plaintiff argues that its extra-record

evidence should be considered because it falls within three of the eight exceptions identified by the

D.C. Circuit court in that case.  Plfs. Response to Motion to Strike at 2.   Plaintiff argues that the

exceptions allowing extra record evidence (1) in cases arising under NEPA (seventh <u>Esch</u>

exception); (2) where the agency failed to consider factors relevant to its decision (second <u>Esch</u>

exception); and (3) where a case is so complex that the court needs more evidence to allow it to

---

the court found that in order for it to review extra record evidence, the moving party had to meet the burden of showing that one of the <u>Esch</u> exceptions applied.  <u>Id.</u> at 5.  But, what the magistrate judge overlooked in <u>Pacific Shores</u> is the salient point that in <u>Fund for Animals</u>, the court applied the <u>Esch</u> exceptions in the context of a motion to supplement the record, requiring that the moving party establish that one of the exceptions apply before it allowed the extra-record evidence as a supplement to the record.  <u>Fund for Animals</u>, 391 F. Supp. at 197.  Moreover, the court's explanation of how extra-record evidence should be addressed is *dicta*, because it ultimately concluded that the agency had properly designated the record, and did not consider whether one of the extra record exceptions applied.  <u>Pacific Shores</u>, 448 F. Supp. 2d at 6.  To the extent that <u>Pacific Shores</u> can be read as setting forth a different standard, Federal Defendants respectfully suggest that <u>Fund for Animals</u>, upon which <u>Pacific Shores</u> relies, sets forth the correct test.

understand the issues (fourth Esch exception).  As it did in its brief on the merits, Plaintiff relies

heavily on out-of-circuit case law, even though the D.C. Circuit has addressed the issue.  Plaintiff's

reliance on Esch is also misplaced.

### 1.    There Is No Blanket Rule Allowing Extra-Record Evidence in NEPA Cases

In Esch, a case involving the Agriculture Adjustment Act of 1938, 7 U.S.C. § 1385, the D.C.

Circuit listed eight exceptions to the record review requirement that had been recognized by various

other courts.  The seventh listed exception is identified as "cases arising under [NEPA]" but it had

no application in Esch.  Instead, the court's resolution turned on the fact that the aggrieved parties

– farmers challenging the suspension of their farm subsidy benefits – had been denied administrative

hearings and an explanation for the adverse administrative decision rendered against them.  Esch,

876 F.2d at 988, 992.  The D.C. Circuit concluded that, where documents are actually considered

by an agency but omitted from the record, supplementation is appropriate.  876 F.2d at 992.  Such

a circumstance does not exist here.  Thus Esch lends no support to Plaintiffs' argument. Plaintiff

may not create its own record for review in the district court.

Plaintiff assumes the law affords a blanket exception to the record rule in NEPA cases, but

this assumption would allow the exception to swallow the rule.  Plaintiff cites Fund for Animals, 391

F. Supp. 2d at 199 for the proposition that "deviation from the 'record review' rule is frequently

warranted."  Plfs. Response to Motion to Strike at 11, citing Fund for Animals, 391 F. Supp. 2d at

199.  The cited page does not support Plaintiff's contention.  Rather, Plaintiff inexplicably ignores

that  the court emphasized in Fund for Animals that "[c]ourts grant motions to supplement the

administrative record only in exceptional cases."  391 F. Supp. 2d at 197.  Although Fund for

Animals was a challenge brought pursuant to NEPA, the court considered whether the extra-record

evidence was appropriate under the exception permitting extra-record evidence to assess whether the agency considered relevant factors (the second Esch exception). Id. at 199. The court also permitted the extra record evidence in part because the plaintiffs established that the agency had improperly excluded adverse information that was (1) known to it at the time of the decision; (2) that the extra record evidence was directly related to the decision; and (3) that the documents were adverse to the decision. Id. at 198. The Court did not rule based on a blanket NEPA exception.

Several courts have found the Esch exceptions to be dicta or have distinguished Esch. See, e.g., Peterson Farms I v. Espy, 1994 WL 26331 at *3, 15 F.3d 1160 (D.C. Cir. Jan. 25, 1994) (Esch exceptions are "dicta"); Oceana, Inc. v. Evans, 384 F. Supp. 2d 203, 217 n.17 (D.D.C. 2005) (recognizing the eight exceptions set forth in Esch as dicta); Beverly Enter. v. Herman, 130 F. Supp. 2d 1, 8 n.2 (D.D.C. 2000) (noting that the exceptions are limited).

The Second Circuit's decision in County of Suffolk v. Secretary of Interior, 562 F.2d 1368 (2d Cir. 1977), upon which Plaintiff relies, Plfs. Response to Motion to Strike at 11, offers a useful example of when the NEPA exception might properly be applied. In County of Suffolk, the court explained that extra-record evidence may be appropriate where the "EIS has neglected to mention a serious environmental consequence, failed adequately to discuss some reasonable alternative, or otherwise swept "stubborn problems or serious criticism . . . under the rug. . ." 562 F.2d 1385-86 (citation omitted). Plaintiff also cites Citizens for Alternatives to Radioactive Dumping v. U.S. Dept. of Energy, 485 F.3d 1091, 1096 (10th Cir. 2007), but again omits an important qualification. The Tenth Circuit, like the D.C. Circuit, emphasized in the important of allowing extra-record evidence only in "extremely limited circumstances. . ." Id. at 1096. In other words, courts in other circuits have permitted extra-record evidence in the NEPA context when the moving party makes

the same showing set forth in the second <u>Esch</u> exception: that the agency failed to consider factors relevant to its decision.  <u>See also</u> <u>City of Auburn v. U.S. Government</u>, 154 F.3d 1025, 1032 n.8 (9th Cir. 1998) (rejecting affidavit purportedly proffered to explain technical issues, the court reiterated that it "repeatedly has stated that judicial review in NEPA cases almost always should be based upon the record presented to the agency.").  Plaintiff's reliance on out of circuit cases for the proposition that a general NEPA exception broadly permits consideration of extra-record evidence is not supported by the case law of this Circuit.  Thus, even if the Court were to ignore Plaintiff's failure to show that the record is so bare as to prevent effective judicial review, the Court should decline to consider the documents proffered by Plaintiff under a claimed general NEPA exception.  And, as we show below, Plaintiff has not established that BLM failed to consider factors relevant to its decision.

## 2.    The Agency Considered Relevant Factors

Citing Sixth Circuit, Ninth Circuit and Eleventh Circuit cases, Plaintiff argues that the Sparrow declaration and the documents it refers to as the "Wind Energy documents" are needed to "identify for the Court relevant information that is not included in the Administrative Record, but that clearly should have been considered by the BLM at the time of its decision."  Plfs. Response to Motion to Strike at 3.  <u>City of Williams v. Dombeck</u>, 151 F. Supp. 2d 9 (D.D.C. 2001) addresses this question.  In that case, as the court explained, "Plaintiffs argue half-heartedly that an extra-record inquiry is appropriate in this case and cite to Ninth Circuit case precedent permitting such an inquiry." <u>Id.</u> at 18 n.6.  As does the Plaintiff here, the plaintiffs in that case relied on <u>Asarco, Inc.</u> <u>v. EPA</u>, 616 F.2d 1153, 1160 (9th Cir. 1980).  <u>Id.</u>; <u>see also</u> Plfs. Response to Motion to Strike at 5, citing <u>Asarco</u>.

The court found the plaintiffs' argument was flawed because, as also set forth above, the "Plaintiffs fail to consider the clear law in this circuit which permits an extra-record inquiry only in exceptional cases where 'the agency failed to explain administrative action [so] as to frustrate judicial review' or Plaintiffs make the 'strong showing of bad faith or improper behavior.'" 151 F. Supp. 2d at 18 n.6, quoting IMS, P.C. v. Alvarez, 129 F.3d at 624 (other quotations and citations omitted). Therefore, the court rejected the plaintiffs' argument that extra record evidence was needed to show that the agency failed to consider all relevant factors, finding that the plaintiffs "point to nothing specific to show that effective judicial review will be thwarted without an extra-record inquiry." 151 F. Supp. 2d at 18 n.6.  Since Plaintiff fails to meet this first prong, the Court need go no further.

But, even assuming that it had made such showing, the Court should not consider the Sparrowe declaration or the Wind Energy EIS.  Plaintiff again relies on Fund for Animals, claiming that in that case, the court allowed the plaintiffs to include several documents that were relevant to the decision but that the agency said it had not considered.  According to Plaintiff, the Sparrowe declaration, which supposedly describes the failure of adaptive management in a different BLM project, and the Wind Energy EIS are similar to the documents the court permitted in Fund for Animals.  Plfs. Response to Motion to Strike at 5-6.  Plaintiff's reliance is misplaced.  In Fund for Animals, the plaintiffs challenged the Fish and Wildlife Service's decision to promulgate rules permitting and expanding hunting on National Wildlife Refuges.  391 F. Supp. 2d at 195.   In contrast to the documents Plaintiff offers here, the challenged documents in Fund for Animals contained information "directly relevant" to the promulgation of the challenged rules.  Id. at 198. Three of the four documents were created by the agency and the fourth was created by the General

Accounting Office. Id. Each of the documents contained information about the impacts of increased hunting on the refuges, the subject of the rules. Id. Moreover, the court's conclusion that the record should be supplemented with the four documents turned on its conclusion that the agency had skewed the record by excluding adverse information that was "highly relevant" to the decision. Id. at 198-99.

Plaintiff has made no such showing here. First, the Sparrowe declaration obviously was not before the agency at the time of the decision. It was created by Plaintiff specifically to dispute BLM's conclusions, and, unlike the documents the court considered in Fund for Animals, relies on documents relevant to BLM's management of development in the Pinedale Anticline project to collaterally attack the decision here. See, e.g., Sparrowe decl. at ¶¶ 29-55. Moreover, as we explained in detail in our cross-motion for summary judgment, Sparrowe's declaration does not identify factors BLM failed to consider; it erroneously characterizes the record by asserting that BLM failed to properly apply adaptive management principles. Fed. Def. SJ Br. at 21 n.9 & 24. We showed in our brief that BLM did consider the factors Sparrowe claimed BLM overlooked. Id. Likewise, while Plaintiff claims the Wind Energy documents are necessary to evaluate whether BLM adequately addressed cumulative impacts, as we explained in our cross-motion for summary judgment, the Wind Energy programmatic EIS is entirely irrelevant to the analysis because there are no proposals for such development in the project area. Fed. Def. SJ Br. at 27-28.

Plaintiff relies primarily on Carlton v. Babbitt, 26 F. Supp. 2d 102 (D.D.C. 1998) in support of its argument that the Court should allow it to supplement the record to explain complex or technical issues, Plfs. Response to Motion to Strike at 8, but the decision is more supportive of BLM's position. In that case, the court considered whether the record should be supplemented with

11

several documents. In particular, the plaintiffs sought to supplement the record with several documents that concerned the size and stability of a population of grizzly bears. The court permitted supplementation of the record with a single document showing that the author of a scientific study had "explicitly disclaim[ed] the [Fish and Wildlife Service's] optimistic reading of his article." Id. at 108. But, it declined to supplement the record with several other documents regarding the viability of the grizzly bear population because record showed, as it does here, that the agency had considered that factor. Id. The court's consideration of the issue turned on its evaluation of whether the agency had considered relevant factors. Id. Contrary to Plaintiff's argument, it did not address whether the extra-record evidence was permissible under the exception allowing supplementation to explain complex or technical issues.

Finally, while Plaintiff makes an unsupported allegation that BLM purposely skewed the record to exclude relevant information, Plfs. Response to Motion to Strike at 7, as we pointed out in our initial motion to strike, the time to have raised that argument has passed. The scheduling order provided that "[i]n the event a Party has concerns regarding the content or completeness of the administrative record, it shall raise those concerns to the Federal Defendants . . . and attempt to resolve those concerns in good faith." Docket 28-2 at 2. If a party had concerns, then its remedy was to file a motion with the Court. Id. Plaintiff made no such motion, and its unsupported argument that BLM skewed the record to exclude adverse information should be rejected. The Sparrowe declaration and the Wind Energy documents are not "highly relevant" to the challenged decision, were not "directly or indirectly" before the agency at the time of the decision, and do not demonstrate that BLM failed to consider relevant factors. The Court should therefore strike the documents.

3.       **Extra-Record Evidence Is Not Needed to Explain Complex Information**

Next, Plaintiff claims that Dr. Braun's declaration[7] and Exhibit N to its motion for summary

judgment, a January 29, 2008 Wyoming Game and Fish Department memorandum addressing recent

science on sage grouse are admissible to explain complex subjects, specifically the "complex life-

cycle requirements of the Greater sage grouse and the impact of oil and gas development on this

species." Plfs. Response to Motion to Strike at 7. Plaintiff makes no effort to explain how the 2008

Wyoming Game and Fish memorandum fits within the exception, and the Court should therefore

conclude that Plaintiff has not met its burden with regard to that document. Moreover, because it

post-dates the decision, it obviously could not have been considered by the decision-maker and is

not appropriately before this Court. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420

(1971) (review of an agency's decision "is to be based on the full administrative record that was

before the [agency] at the time [it] made [its] decision.")

Plaintiff also has not demonstrated that the Braun declaration, which, contrary to its

assertion, does not attempt to explain complex or technical information, falls within the exception.

While courts have permitted supplementation of the record where extra record evidence is needed

to help the court understand complex issues, such evidence is not necessary here. In Corel Corp.

v. United States, 165 F. Supp. 2d 12, 30 (D.D.C. 2001), the plaintiff submitted a lengthy declaration

---

[7] Plaintiff suggest that because Federal Defendants have not contested the qualifications of Dr. Braun or Dr. Sparrowe, we have conceded that expert testimony "is admissible if the witness is qualified and his testimony is capable of assisting the trier of fact." Plfs. Response to Motion to Strike at 16. Plaintiff's efforts to establish the qualifications of Drs. Braun and Sparrowe again betray its lack of understanding of APA record review. The cases Plaintiff cites in support of its argument are not cases involving challenges brought pursuant to the APA, and are therefore irrelevant. Plfs. Response to Motion to Strike at 16. Regardless of the qualifications of Plaintiff's declarants, a "battle of experts" is "a battle conducted in an arena that is off limits to APA judicial review." Envtl. Def. v. U.S. Army Corps of Eng'rs, 515 F. Supp. 2d 69, 82 (D.D.C. 2007).

from an economist, which it contended was necessary to explain technical information.  The court struck the declaration, finding that it was "not primarily explanatory in nature."  Id. at 31.  The court concluded that the analysis in the declaration did not address factors the agency failed to consider, but instead "question[ed] the manner in which [the agency] went about considering the factors it did."  Id. at 31-32.  Therefore, because the court concluded that the declaration was offered "primarily to attack the propriety of the challenged agency action," it was stricken.  Id. at 32. See also Northwest Envtl. v. NMFS, 460 F.3d 1125, 1145 (9th Cir. 2006) (striking declaration that "address[ed] fairly straightforward economic aspects of the Corps' analysis, not technical and scientific analyses that might require further explanation.").

In Alsea Valley Alliance v. Evans, 143 F. Supp. 2d 1214 (D. Or. 2001), the court provided a useful discussion of the issue.  Considering a motion to strike a declaration that the court construed as having been offered to "explain technical terms or complex subject matter" (citation and internal quotation omitted), the court stated that a party may not "circumvent the general rule, that judicial review is limited to the administrative record, by simply labeling a declaration as "'assisting the court.'"  Id. at 1216.  Rather, the court must examine the declaration "to determine whether it truly assists the court in understanding technical or complex matters or merely attempts to argue the sufficiency of the record."  Id.  The court struck the challenged declaration, which contained statements such as "I find no evidence in the administrative record," that the agency considered a particular issue and "the data [relied upon by the agency] are incomplete, statistically imprecise, and provide a fragmentary and incomplete picture" of the science.  Id. at 1216-17.  It concluded that rather than explaining complex subject matter, the declaration contained the declarant's "interpretation, opinion, and argument of what ultimate conclusions the Record can and cannot

14

support." Id. at 1216.  The court contrasted an "'explanation' of complex material [which] naturally assists the court in its understanding of the record *as it stands*," with "expert opinion regarding the sufficiency of the record [which] take[s] on independent evidentiary value of its own and naturally falls outside the record because the expert opinion was not before the agency prior to its final determination."  Id. at 1217.  The former is proper, but the latter is inadmissible because it falls outside the record.  Id.

Therefore, at the outset, the limited exception permitting explanation of complex or technical terms does not allow Plaintiff to submit a declaration based on a broad claim that the declaration "will help the Court understand the cumulative body of science on sage grouse."  Plfs. Response to Motion to Strike at 7.  Moreover, what the declaration shows is that Dr. Braun improperly provides his own interpretation of the evidence, which is straightforward and needs no further explication to assist the Court in its understanding.  For example, Dr. Braun contends that "[d]evelopment of energy resources in sagebrush steppe habitats has negatively affected Sage-grouse and will continue to do so unless proper safeguards are taken that reflect the biological needs of the species, as clearly reflected in the relevant scientific literature cited herein."  Braun decl. at ¶11.  He does not explain exactly what "biological needs" he means, but presumably he refers to his contention that important areas for sage grouse are those used in winter, for nesting, and for brood use.  Id. at ¶ 13.  These are basic concepts, obviously requiring no expert explanation, since Braun fails to explain them, that are already contained in the administrative record.  FEIS at 4-76 (AR 2395) (recognizing that natural gas development negatively impacts sage grouse); FEIS at 3-94 (AR 2258) (importance of winter, nesting and brooding habitat).  Likewise, although he fails to identify the information BLM supposedly ignored, Braun contends that BLM disregarded a "significant volume of information

developed since the 1980s" that allegedly shows that BLM should have increased the no surface occupancy restriction around leks and offers his opinion that the "current scientific evidence" supports his conclusion that a greater restriction is necessary.  Braun decl. at ¶¶ 17-19, 21.  These issues are also addressed in the administrative record, as explained in our summary judgment brief, and expert testimony is not needed to understand them.  Fed. Def. SJ Br. at 38-41, 45.  Indeed, the Court did not need an expert declaration to understand these same issues as raised in Natural Resources Defense Council's motion for a preliminary injunction.  NRDC v. Kempthorne, 525 F. Supp. 2d 115, 121-22 (D.D.C. 2007).  Rather, the Court was able to evaluate NRDC's claim that BLM failed to adopt appropriate mitigation for sage grouse by examining the administrative record. Id.  Extra-record evidence is likewise not needed here.

Dr. Braun also relies on evidence post-dating the decision, Exhibit C to his declaration, which is the same 2008 memorandum Plaintiff attached to its motion as Exhibit N.  None of this improper evidence aids the court by explaining complex or technical information.  It simply provides Dr. Braun's view of the evidence, which he did not present to the agency prior to its decision.[3/]  While Plaintiff disingenuously claims that "Dr. Braun does not opine on BLM's performance in this particular case," it inadvertently exposes that its aim is to engage the Court in an improper consideration of Dr. Braun's post hoc rationale with its argument that the Court "may rely on Dr. Braun's expertise to determine for itself whether BLM's conclusions concerning the effectiveness of sage grouse mitigation measures are supported by the record."  Plfs. Response to Motion to Strike

---

[3/] Plaintiff claims that BLM wrongly suggested that Dr. Braun did not comment on the proposed action, asserting that the record shows that he did.  Plfs. Response to Motion to Strike at 9.  But, the document it cites, AR 9941-10031, is Biodiversity Conservation Alliance's comments on the FEIS, which attached a 2006 study by Dr. Braun.  AR 9988.  Dr. Braun failed to submit comments of his own, and the Court should decline to permit him to do so now.

at 9.  The Court must examine the record to ascertain whether BLM's decision is arbitrary or capricious; Dr. Braun's opinion falls outside the record and should be stricken.

None of the cases upon which Plaintiff relies support its claim that the Court should consider the Braun declaration.  Esch, 876 F.2d at 991, simply sets forth the standard.   In Beach Communications, Inc. v. FCC, 959 F.2d 975, 987 (D.C. Cir. 1992), the court did not address the exception.  Rather, it held that where the agency had not adequately explained its decision, it was appropriate for the court to require the agency to provide additional explanation.  Id. at 987.  Carlton v. Babbitt, as explained above, also does not address the exception.  The out-of-circuit cases upon which Plaintiff relies also fail to support its claim.  In Custer County v. Garvey, 256 F.3d 1024, 1028 n.1 (10th Cir. 2001), the court simply cited as one of the exceptions cases that are "so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues;" the court denied the motion to supplement.  Bunker Hill Co. v. EPA, 572 F.2d 1286, 1292 & n.8 (9th Cir. 1977) involved a challenge to Clean Air Act regulations, not NEPA, and the additional information considered by the court consisted of "supplemental briefs detailing the technical issues involved and the portions of the record relevant to the issues' resolution."  In Sierra Club v. Babbitt, 69 F. Supp. 2d 1202, 1209 (E.D. Cal. 1999), the court also cited as an exception the situation where the information is necessary to explain complex terms; however, it provided no explanation as to what information required further explanation.

In Pettiford v. Sec'y of the Navy, No. 05-2082(ESH), 2008 WL 724017, *1 (D.D.C. Mar. 17, 2008) and Kunaknana v. Clark, 742 F.2d 1145, 1148, 1149 (9th Cir. 1984), which Plaintiff cites parenthetically, Plfs. Response to Motion to Strike at 10, the courts supplemented the record with additional evidence provided by the agency to further explain its decision.  Thus, although not

applicable here, if the Court finds that additional explanation is necessary because the record frustrates judicial review, that explanation is to come from the agency, not plaintiff. See Friends of the Payette v. Horseshoe Bend Hydroelectric Co., 988 F.2d 989, 997 (9th Cir. 1993) ("When a failure to explain action frustrates judicial review, the reviewing court may obtain from the agency, through affidavit or testimony, additional explanations for the agency's decisions. The extra-record inquiry is limited to determining whether the agency has considered all relevant factors and has explained its decision." (internal citations omitted)). See, e.g., Vermont Yankee, 435 U.S. at 549.

In Sierra Club v. U.S. Forest Serv., 535 F. Supp. 2d 1268, 1272 (N.D. Ga. 2008), which Plaintiff also cites parenthetically, Plfs. Response to Motion to Strike at 8, the court apparently held an evidentiary hearing for the purpose of supplementing the record. While we question the propriety of an evidentiary hearing in an Administrative Procedure Act context, it appears that the court concluded that it needed additional information from the agency to explain the meaning of technical terms not fully explained in the record. Id. at 1291-92. Finally, Plaintiff quotes heavily from Holy Cross v. U.S. Army Corps of Eng'rs, 455 F. Supp. 2d 532, 539 (E.D. La. 2006), Plfs. Reply to Motion to Strike at 10, but the decision does not address the exceptions established by the D.C. Circuit, and instead concludes that a declaration was necessary because it exposed the insufficiency of the EIS. None of these cases are applicable here because the Braun declaration, notwithstanding Plaintiff's assertion to the contrary, is not offered to explain complex terms or technical information. The Court should therefore strike the declaration.

**B.    A Request for Judicial Notice Cannot Escape the Principles of APA Record Review.**

Plaintiff asks the court to take judicial notice of governmental publications and comments by Anadarko, which it claims support its argument that BLM failed to consider the cumulative

18

impacts of wind energy development.  Plfs. Response to Motion to Strike at 13.  Plaintiff "string

cites" several cases that are not relevant because none of the cases address the situation before the

court here, review of agency action in the NEPA context.  Plfs. Response to Motion to Strike at 14.

Only one case Plaintiff cites, Pueblo of Sandia v. United States, 50 F.3d 856, 861 n.6 (10th Cir.

1995), provides an analogous situation to the question before this Court.  In Pueblo of Sandia,

evaluating a claim pursuant to the National Historic Preservation Act, the court evaluated whether

the agency had made a "reasonable effort" to identify historic properties in a particular area.  Id. at

860.  The court took judicial notice of a document from the State Historic Preservation Officer that

concluded that there was not enough information to make a determination whether the area

contained historic resources, but it did not explain its rationale for doing so.  Id. at 861 n.6.

     Although the D.C. Circuit has not directly addressed this question,[4] the Ninth Circuit and

the Court of Federal Claims have provided more useful explanations than the Tenth Circuit in

rejecting the use of judicial notice in the context of a challenge brought pursuant to the APA.  While

Plaintiff insists that the opposition to a motion to take judicial notice is unfounded because "it is

unclear precisely what Defendants actually dispute (or credibly could dispute)," Plfs. Response to

Motion to Strike at 14, it misses the point.  Creating a rule that allows the court to take judicial

notice in a record review case ultimately threatens to eviscerate the rule limiting review to the

record.  In Rybachek v. EPA, 904 F.2d 1276, 1296 n.25 (9th Cir. 1990), the Ninth Circuit rejected

the same tactic where a party filed a motion to take judicial notice of several documents.  The court

---

[4] In Nebraska v. EPA, 331 F.3d 995, 998 and n.3 (D.C. Cir. 2003), evaluating a challenge to the
constitutionality of EPA regulations, the court took judicial notice of documents that were not in the
administrative record, but which were on EPA's website.  It did not address the question of the
propriety of taking judicial notice of extra-record documents to evaluate a claim pursuant to the
Administrative Procedure Act.

construed the motion as a motion to supplement the record.  Id.  The Ninth Circuit rejected the

motion, finding that the agency "did not rely on the information contained in the . . . proffered

documents, nor does the information address issues not already present in the record."  Id., citing

Friends of the Earth v. Hintz, 800 F.2d 822, 829 (9th Cir.1986) (listing "exceptions . . . to the rule

that review of agency action is limited to the administrative record").  Because the documents did

not fall within one of the exceptions, the court found that it could not be used to attack the decision.[5/]

904 F.2d at 1296 n.25.   Plaintiff cites Seifert v. Winter, No. 06-2219 (RBW), __ F. Supp. 2d __,

2008 WL 879029, at *6, n.5 (D.D.C. April 3, 2008), Plfs. Response to Motion to Strike at 15, but

the decision supports BLM's decision because, applying Ninth Circuit rule, the court concluded it

could take judicial notice of government manual where one of the exceptions applied.  Plaintiff

makes no such showing here.

    In Murakami v. U.S., 46 Fed. Cl. 731, 734 (Fed. Cl. 2000), the court considered plaintiff's

motion to supplement the record, or in the alternative to take judicial notice of several documents,

including government documents and newspaper articles.  The court denied the motion, finding that

none of the Esch exceptions applied.  Id. at 736.  Further, addressing the question of whether it

should take judicial notice of the documents, the court found that it was "disinclined to use Rule 201

to circumvent the established rule requiring review in cases such as this to be based on the

---

[5/] Although we think the rationale set forth in Rybachek is controlling in the Ninth Circuit, to the
extent that Cactus Corner, LLC v. U.S. Dep't of Agric., 346 F. Supp. 2d 1075 (E.D. Cal. 2004) sheds
any light on the question of whether the Court should take judicial notice, Plfs. Response to Motion
to Strike at 14, it is telling that Plaintiff omits the court's statement that "[a] matter is not properly
subject to judicial notice by the court if it involves a central and disputed issue."  346 F. Supp. 2d
at 1098.  Plaintiff contends that the Wind Energy EIS and Anadarko's comments show that BLM
failed to consider cumulative impacts in the challenged EIS; therefore even under the Cactus Corner
rationale, judicial notice is improper because Plaintiff relies on the documents in support of its
argument on a central and disputed issue in the case.

administrative record . . ." Id. at 739.  The court observed that principle should be particularly true where the extra-record evidence was being used to support a theory that was not advanced during the administrative proceedings.  Id.  It held that "discretion to take judicial notice must be exercised sparingly lest Rule 201 be wielded to create an exception that would envelop the established procedures for conducting arbitrary and capricious review."  Id.

Accordingly, the attempt to apply the concept of judicial notice in this case is inappropriate, and Federal Defendants' motion to strike should be granted.

### Conclusion

Federal Defendants' Motion to Strike the extra-record exhibits should be granted.  The Court should also strike those portions of Plaintiff's brief that improperly reference these documents.  Rybachek v. EPA, 904 F.2d 1276, 1296 n.25 (9th Cir. 1990) (granting motion to strike portions of petitioners' brief that included and relies on extra record materials).

Respectfully submitted this 30th day of June, 2008.

RONALD J. TENPAS
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

   /s/ Lori Caramanian
Lori Caramanian
United States Department of Justice
Environment and Natural Resources Division
Environment & Natural Resources Division
1961 Stout Street, 8th Floor
Denver, CO 80294
Phone: (303) 844-1499
Fax: (303) 844-1350
Email: lori.caramanian@usdoj.gov

Attorneys for Federal Defendants

Arthur R. Kleven

21

Attorney-Advisor
U.S. Department of the Interior
Office of the Solicitor, Rocky Mtn. Region