UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THEODORE ROOSEVELT CONSERVATION PARTNERSHIP, )<br>         Plaintiff, )<br>v. )<br> )<br>DIRK KEMPTHORNE, in his official Capacity as the Secretary of the United States Department of the Interior, and UNITED STATES BUREAU OF LAND MANAGEMENT )<br> )<br>         Defendants, )<br> )<br>STATE OF WYOMING, ANADARKO PETROLEUM CORPORATION, WARREN RESOURCES, INC., and DOUBLE EAGLE PETROLEUM CO., )<br> )<br>         Defendant-Intervenors. )| CASE NO. 07-cv-01486-RJL |

**DEFENDANT-INTERVENOR STATE OF WYOMING'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

TABLE OF ACRONYMS .................................................................................................iii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

    I.     The BLM complied with NEPA ....................................................................... 1

          A.     The BLM considered a reasonable range of alternatives ........................ 1

          B.     The BLM adequately identified mitigation measures ............................. 3

          C.     The BLM analyzed cumulative impacts of reasonably foreseeable future actions and correctly excluded wind development from the assessment ............................................................................................. 4

          D.     The BLM sought out and relied on reasonable information regarding mule deer ...................................................................................... 6

    II.    The BLM did not violate FLPMA's multiple use and sustained yield provision ...................................................................................................... 7

          A.     The BLM conformed with the Great Divide RMP which was developed in accordance with FLMPA ...................................................... 7

          B.     The BLM's planned level of development within the RMP area does not conflict with FLMPA's mandate that the final EIS and ROD conform to the governing RMP ............................................................ 8

          C.     The Atlantic Rim ROD conforms with the Great Divide RMP regarding species protection ..................................................................... 10

CONCLUSION ............................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Cases**

*Airport Impact Relief, Inc. v. Wykle,* 192 F.3d 197 (1st Cir. 1999) ................................. 5

\*     *Alaska v. Andrus,* 580 F.2d 465 (D.C. Cir. 1978) .......................................................... 6

*Ark. Wildlife Fed'n v. U.S. Army Corps of Eng'rs,* 431 F.3d 1096 (8th Cir. 2005) ...................... 5

\*     *Baltimore Gas & Elec. Co. v. NRDC,* 462 U.S. 87 (1983) ........................................... 11

*Citizens Against Burlington, Inc.  v. Busey,* 938 F.2d 190 (D.C. Cir. 1991) ............................ 3, 5

*City of Grapevine, Tex v. Dept. of Transp.,* 17 F.3d 1502 (D.C. Cir. 1994) ................................ 3

*City of Olmsted Falls, Ohio  v. FAA,* 292 F.3d 261 (D.C. Cir. 2002) ........................................... 11

\*     *Izaak Walton League of Am. v. Marsh,* 655 F.2d 346 (D.C. Cir. 1981) ....................... 11

*Klamath-Siskiyou Wildlands Ctr. v. Medford Dist. of the BLM,* 400 F.Supp.2d 1234 (D. Or.

      2005) ....................................................................................................................... 8

\*     *Mineral Policy Ctr. v. Norton,* 292 F.Supp.2d 30 (D.D.C. 2003) .................................. 7

*Pennaco Energy, Inc. v. U.S. Dep't of the Interior,* 377 F.3d 1147 (10th Cir. 2004) ..................... 8

\*     *Pub. Lands Council v. Babbitt,* 167 F.3d 1287 (10th Cir. 1999) .................................... 7

*Pub. Utils. Comm'n of the State of Cal. v. FERC,* 900 F.2d 269 (D.C. Cir. 1990) ....................... 5

\*     *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332 (1989). ....................... 3, 4

*S.E. Fed. Power S Customers, Inc. v. Geren,* 514 F.3d 1316 (D.C. Cir. 2008) ......................... 8, 9

*Vill. Of Bensenville v. FAA,* 457 F.3d 52  (D.C. Cir. 2006) ........................................................ 6

**Federal Regulations**

40 C.F.R. §§ 1502.13 ................................................................................................................... 2

40 C.F.R. § 1508.7 ...................................................................................................................... 5

**Federal Rules**

FED. R. CIV.P. 56(c) .................................................................................................................... 11

## <u>TABLE OF ACRONYMS</u>

ARPA ................................................................................Atlantic Rim Project Area

BLM ..............................................................................Bureau of Land Management

EIS ...............................................................................Environmental Impact Statement

FLPMA ................................................................Federal Land Policy and Management Act

NEPA ................................................................National Environmental Policy Act

RFD................................................................ Reasonably Foreseeable Development

RMP ..............................................................................Resource Management Plan

ROD ................................................................................ Record of Decision

**INTRODUCTION**

In their response to Wyoming's cross-motion for summary judgment, Plaintiff reiterates that the Bureau of Land Management ("BLM") did not satisfy the procedural requirements of the National Environmental Policy Act ("NEPA") and the Federal Land Policy and Management Act ("FLPMA") when it adopted the Atlantic Rim environmental impact statement ("EIS") and record of decision ("ROD").

Plaintiff suggests that the BLM violated NEPA by not considering enough alternatives when completing the Atlantic Rim EIS, by failing to analyze cumulative impacts of future wind development projects, by failing to await the completion of a mule deer study, and for adopting unworkable mitigation procedures. The record clearly shows that Plaintiff did not meet its burden of showing that the BLM acted arbitrarily or capriciously in adopting the Atlantic Rim EIS and ROD.

Plaintiff also argues that the BLM violated FLPMA's multiple use and sustained yield mandates by failing to ensure that the ROD was consistent with the Great Divide Resource Management Plan ("RMP"). The record also shows that BLM has met its obligations under FLPMA by adhering to its RMP, which was approved in accordance with FLPMA. This Court should grant summary judgment in favor of Defendant-Intervenor State of Wyoming.

**ARGUMENT**

**I.    The BLM complied with NEPA**

**A.    The BLM considered a reasonable range of alternatives**

Plaintiff's contention that the BLM did not consider a reasonable range of alternatives cannot withstand a fair review of the administrative record. Pl. Res. Cr. Mot. Sum. J. ("Pl. Br.") at 24. Plaintiff contends that the BLM did not consider a phased development alternative that

1

was included in the draft EIS but was later removed from the final EIS. *Id.* at 25. By removing this alternative before finalizing the EIS, Plaintiff contends that the BLM violated NEPA. However, the BLM did consider a full range of alternatives, and only removed the Plaintiff's preferred alternative once it became apparent that it would not be feasible.

The regulations implementing NEPA require an agency to "specify the underlying purpose and need to which the agency is responding" and to "[r]igorously explore and objectively evaluate all reasonable alternatives, and for alternatives which were eliminated from detailed study, briefly discuss the reasons for their having been eliminated." 40 C.F.R. §§ 1502.13, 1502.14. The setting of the objectives and the range of alternatives to be considered by an agency are governed by a "rule of reason." *See City of Grapevine, Tex. v. Dept. of Transp.,* 17 F.3d 1502, 1506 (D.C. Cir. 1994); *Citizens Against Burlington, Inc. v. Busey,* 938 F.2d 190, 195 (D.C. Cir. 1991). The Court must uphold "an agency's definition of objectives so long as the objectives that the agency chooses are reasonable, and . . . uphold its discussion of alternatives so long as the alternatives are reasonable and the agency discusses them in reasonable detail." *Citizens Against Burlington, Inc.,* 938 F.2d at 196.

The Atlantic Rim Project Area ("ARPA") has an identified purpose and need of extracting natural gas. The BLM considered a range of alternatives, including an alternative advanced here by Plaintiff that would phase development. After soliciting comment and reviewing the phased development alternative, the BLM concluded that the project was infeasible under that alternative. (AR 2161). The BLM determined that conditions of the geologic substrate would not support a phased development, and therefore it would not be feasible under the current purpose and need of the project. The BLM thus considered a reasonable range of alternatives and took the required "hard look" that is required under NEPA.

2

Therefore, the BLM's decision to eliminate the phased development alternative was not arbitrary or capricious.

**B.    The BLM adequately identified mitigation measures**

Plaintiff misses the mark by suggesting that the BLM did not adequately identify mitigation measures.  Pl. Br. at 30.  Plaintiff claims that although the BLM identified mitigation measures, it left them too vague or inadequate to rely on, and consequently violated NEPA.  *Id.* at 31.  Yet to make this claim, Plaintiff ignores the overwhelming body of law on mitigation which requires the agency to identify mitigation measures, but does not require their implementation.  The BLM met its obligation to present mitigation methods and is under no obligation to implement the plan.

Courts have clearly articulated NEPA's mitigation requirements.  "[O]ne important ingredient of an EIS is the discussion of steps that can be taken to mitigate adverse environmental consequences."  *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 351 (1989).  Although the preparing agency should include a "reasonably complete discussion of possible mitigation measures," NEPA does not impose a substantive requirement for the agency to thoroughly formulate and adopt a mitigation plan.  *Id.* at 352-53. In fact, "it would be inconsistent with NEPA's reliance on procedural mechanisms—as opposed to substantive, result-based standards—to demand the presence of a fully developed plan that will mitigate environmental harm before an agency can act."  *Id.* at 353.

Contrary to this law, Plaintiff asks this Court to adopt a substantive, rather than procedural standard.  Plaintiff cites a line of cases for the proposition that courts should enforce mitigation measures that were imposed as a condition of project approval. Pl. Br. at 31.  It suggests that the BLM imposed mitigation measures that had to be adhered to because such

3

action was required to finalize the NEPA process. *Id.* However, as Plaintiff admits, the cases upon which it relies invoke mitigation procedures as a means to avoid preparing an EIS. *Id.* at n.15. Plaintiff then suggests that no difference applies for purposes of avoiding an EIS and actually conducting an EIS. This argument flatly ignores NEPA.

An EIS does not require a " 'detailed explanation of specific measures which will be employed to mitigate the adverse impacts of a proposed action.' " *Robertson,* 490 U.S. at 353. "NEPA not only does not require agencies to discuss any particular mitigation plans that they might put in place, it does not require agencies—or third parties—to effect any." *Citizens Against Burlington, Inc.,* 938 F.2d at 206. As it thoroughly explained in its Cross Motion for Summary Judgment, the BLM identified mitigation measures to mitigate against adverse environmental impacts, and therefore took the required hard look at mitigation measures. Fed. Def. Mem. Sup. C. Mot. Sum. J. ("Fed. Def. Br.") at 19. Therefore the BLM took the required "hard look" at mitigation measures and its decision is not arbitrary or capricious.

**C.    The BLM analyzed cumulative impacts of reasonably foreseeable future actions and correctly excluded wind development from the assessment**

Plaintiff alleges that the BLM failed to satisfy its duty under NEPA to analyze the cumulative impacts of reasonably foreseeable future actions. Pl. Br. at 40. Plaintiff maintains that the BLM should have included a nearby Wind Energy Development Program in its analysis because it is reasonably foreseeable. *Id.* at 41. Plaintiff claims that because the BLM policy encourages assessment of wind energy potential, and because the BLM has identified the Atlantic Rim as containing a major wind corridor that development is reasonably foreseeable. *Id.* at 42. This argument fails because the record and common sense dictate that any wind development in the ARPA could not possibly be considered foreseeable.

4

An agency only needs to include cumulative impacts of "reasonably foreseeable future action." 40 C.F.R. § 1508.7.  "An impact is reasonably foreseeable if it 'is sufficiently likely to occur that a person of ordinary prudence would take it into account.' "  *Ark. Wildlife Fed'n v. U.S. Army Corps of Eng'rs,* 431 F.3d 1096, 1102 (8th Cir. 2005).  There is "no need to consider the cumulative impacts" of an action if it is not reasonably foreseeable.  *Pub. Utils. Comm'n of the State of Cal. v. FERC,* 900 F.2d 269, 283 (D.C.Cir. 1990).

The wind power development that Plaintiff maintains should have been included in the analysis cannot be deemed reasonably foreseeable.  Courts defer to an agency's decision when an action is not reasonably foreseeable because it is contingent on events that may or may not occur.  *Airport Impact Relief, Inc. v. Wykle,* 192 F.3d 197, 206 (1st Cir. 1999). The EIS for the Wind Energy Development Program was not completed pursuant to any applications for wind energy development in Wyoming.  It is essentially a scoping document that suggests what types of practices may be instituted if and when wind energy development occurs. *See* Record of Decision, *Implementation of a Wind Energy Development Program and Associated Land Use Plan Amendments* (December 2005).  Any number of things could occur that would delay or prevent the initiation of wind development.  There may be issues of available transmission capacity, economics of construction, acquisition of easements across private land, or even the existence of markets to sell the power that would prevent individuals or companies from applying for wind development permits.  With these contingencies looming over any project, a prudent individual would not find development to be foreseeable. Because the development was not reasonably foreseeable, the BLM's decision not to consider it was is not arbitrary or capricious.

**D.    The BLM sought out and relied on reasonable information regarding mule deer**

Plaintiffs incorrectly argue that because the BLM did not wait for the April 2007 *Final Report for the Atlantic Rim Mule Deer Study* ("Mule Deer Study") to be completed before issuing its ROD for the ARPA it violated NEPA.  Pl. Br. at 36.  Courts have found using the best information available at the time of analysis to be reasonable. *Vill. Of Bensenville v. FAA,* 457 F.3d 52, 71 (D.C. Cir. 2006). Further, "[c]ourts may not substitute their judgment for that of the decisionmaker and insist that the project be delayed while more information is sought." *Alaska v. Andrus,* 580 F.2d 465, 473-474 (D.C. Cir. 1978).

When analyzing the potential impacts to mule deer in the ARPA, the BLM relied on reports by Shell Oil Company, the Wyoming Game and Fish Department, Colorado's Thorne Ecological Institute, the Universities of Idaho and Wyoming, and Wyoming's Western EcoSystems Technology, Incorporated.  (AR 2516-44, 6130-6215, 6254-6338, 6477-6541).  All of these reports discuss the effect of oil and gas development on mule deer distribution and crucial winter range.

The Mule Deer Study did not reach the BLM before the EIS was completed.  (AR 7421-49, 9574-75).  Consequently, since the Mule Deer Study was completed between the completion of the EIS and the ROD, the BLM indicated in the ROD that it would use the study to mitigate development in migration corridors within the ARPA.  (AR 2393).  The BLM complied with NEPA by taking a "hard look" in its EIS at the environmental consequences of its actions on mule deer, and its decision was not arbitrary and capricious.

**II.     The BLM did not violate FLPMA's multiple use and sustained yield provision**

**A.     The BLM conformed with the Great Divide RMP which was developed in accordance with FLPMA**

Plaintiff claims that the BLM violated FLPMA's multiple use and sustained yield management requirement by dedicating the ARPA to coal bed methane development without balancing other interests including ensuring a high level of wildlife and recreational hunting in the future. Pl. Br. at 7. The record does not support this proposition. In fact, the record shows that the BLM conformed to its RMP, which was completed in accordance with FLPMA.

FLPMA's multiple use and sustained yield provision describes sustained yield requirements. "The Secretary [of the Interior] shall manage the public lands under principles of multiple use and sustained yield, in accordance with the land use plans developed by him . . . when they are available[.]" *Mineral Policy Ctr. v. Norton*, 292 F.Supp.2d 30, 49 (D.D.C. 2003), *quoting* 43 U.S.C. § 1732(a). Contrary to Plaintiff's claim, this language clearly indicates that when a land use plan exists, management of the public land shall be in conformance with the plan. In fact, FLPMA requires land use planning: "The Secretary shall, with public involvement and consistent with the terms and conditions of [FLPMA], develop, maintain, and, when appropriate, revise land use plans[.]" *Pub. Lands Council v. Babbitt,* 167 F.3d 1287, 1290 (10th Cir. 1999). In this case, the Great Divide RMP presents a comprehensive management framework for approximately nine million acres of the BLM-administered public land, including the ARPA. (AR 643-720) The RMP was developed through NEPA by way of an EIS and detailed four separate multi-use alternatives. (AR 650, 652). The RMP was also developed in accordance with FLPMA's multiple use and sustained yield provision. (AR 650). Therefore, by

following the plan in the EIS, the BLM also followed the land use planning and multiple use policies of FLPMA and its decision is not arbitrary and capricious.

Plaintiff continues to assert that the BLM violated FLPMA's multiple use and sustained yield provision in the Atlantic Rim ROD by failing to protect hunting and recreation opportunities when it did not use the best available science. Pl. Br. at 7. However, it fails to recognize that the proper analysis is whether the ROD conforms to the governing RMP, which was enacted under FLPMA, not an analysis of the ROD under FLPMA. *See Pennaco Energy, Inc. v. U.S. Dep't of the Interior,* 377 F.3d 1147, 1151 (10th Cir. 2004). ("In the context of oil and gas development, the BLM is initially charged with determining whether the issuance of a particular oil and gas lease is consistent with the RMP."); *Klamath-Siskiyou Wildlands Ctr. v. Medford Dist. of the BLM,* 400 F.Supp.2d 1234, 1241 (D. Or. 2005) ("Failure of a project to comply with the requirements of the RMP is a violation of FLPMA and its implementing regulations.") As discussed earlier in this brief, land should be managed under the doctrines of multiple use and sustained yield in accordance with existing land use plans. By ignoring the direction of the courts and the body of evidence in the record, Plaintiff is actually asking this Court to substitute its judgment for that of the agency.

**B.      The BLM's planned level of development within the RMP area does not conflict with FLPMA's mandate that the final EIS and ROD conform to the governing RMP**

Plaintiff argues that the RMP projected that 1440 wells would be drilled between 1987 and 2007 and that since the planned level of development is expected to exceed that amount, the ROD conflicts with the RMP. Pl. Br. at 13. In support of their argument they rely on *S.E. Fed. Power Customers, Inc. v. Geren,* 514 F.3d 1316 (D.C. Cir. 2008). Pl. Br. at 15. However, the case does not apply to this case for numerous reasons.

8

First, *Southeastern* was a water management case involving Lake Lanier in Georgia. *S.E. Fed. Power Customers, Inc.* 514 F.3d at 1318. Second, the lake had no RMP, so the challenge was to an agreement to manage the lake under the Water Control Act, Flood Control Act and NEPA, not FLPMA. *Id.* Finally, the case centered on an operational change to the reservoir's management, and the court held that under the Water Control Act, a reallocation of 22% of the available storage space was significant enough to require congressional approval. *Id.* at 1324.

By contrast, the Great Divide RMP is not a management agreement under the Water Control Act or Flood Control Act. The RMP authorizes the BLM to administer the activities of over four million acres of public land surface and five million acres of federal mineral estate in Wyoming. (AR 650). Therefore, Plaintiff's argument that the reasonably foreseeable development ("RFD") scenario used by the BLM to develop the RMP was "so far exceeded as to render the Project inconsistent with the Great Divide RMP" fails as it relies on inappropriate legal authority to support its claim. The ARPA falls within this vast area of authorization, and the BLM's authorization of the project does not conflict with the RMP.

In order to believe Plaintiff's argument, one must assume that a cap on development exists. This is simply not true. The Great Divide RMP in no way caps the amount of oil and gas development in the Great Divide Resource Area or the ARPA. Instead, the RMP articulated what the BLM considered to be a RFD at the time the BLM drafted the RMP. Even if the ROD exceeds the RFD scenario, it does not signify that the ROD is not in conformance with the RMP.

More important than the number of wells that would be, or are, located within the ARPA are the environmental effects that the RMP set out to mitigate when oil and gas development occurs. Contrary to what Plaintiff wants this Court to believe, the ROD and RMP are in conformance on this important issue.

9

**C.    The Atlantic Rim ROD conforms with the Great Divide RMP regarding to species protection**

Plaintiff asserts that the BLM has violated FLPMA by failing to protect species within the ARPA in its ROD on the Atlantic Rim project.  Pl. Br. at 7.  However, the ROD conforms with the Great Divide RMP that was prepared in accordance with FLPMA.  Consequently, Plaintiff's claim must fail.

The RMP's management objective is to "provide opportunity for leasing, exploration, and development of oil and gas while protecting other resource values." (AR 679).  With protection in mind, the RMP goes on to say that "[l]eases will be issued with needed restrictions to protect resources" such as sage grouse leks, high priority wildlife habitat, raptor concentration areas, crucial winter range for elk, and overlapping big game crucial winter range.  (AR 679, 681).

In the final EIS and ROD, the BLM discusses adverse effects of developing the ARPA on big game crucial winter range and the sage grouse.  (AR 2395, 2398, 2402).  In response to the environmental concerns, and in order to remain in compliance with the RMP, the BLM implemented in the ROD specific mitigation measures and a "performance-based, adaptive management process."  (AR 4798).   This process includes the use of performance goals for migration routes, big game crucial winter range, and the sage grouse.  (AR 4835-38).  The BLM did exactly what the RMP directed—it examined drilling and development in the ARPA, described the adverse effects, and determined appropriate mitigation measures.  The EIS and ROD also use nearly the same mitigation measures laid out in the Great Divide "RMP" for big game winter habitat and sage grouse nesting and breeding habitat.  (AR 696-98).

10

Plaintiff wants this Court to believe that the BLM relied on faulty science, or even no science when developing its mitigation plans.  However, as discussed above and explained in detail in Wyoming's Cross Motion for Summary Judgment, the record does not bear this out.  On a fundamental level Plaintiff simply wants this Court to insert science to the Plaintiff's liking, and ignore the years of thoughtful and thorough planning that went into creating the Atlantic Rim EIS and ROD.

The " 'role of the courts is simply to ensure that the agency has adequately considered and disclosed the environmental impact of its actions and that its decision is not arbitrary or capricious.' " *City of Olmsted Falls, Ohio v. FAA,* 292 F.3d 261, 269 (D.C. Cir. 2002), *quoting Baltimore Gas & Elec. Co. v. NRDC,* 462 U.S. 87, 97-98 (1983).  "In particular, they should not attempt to resolve conflicting scientific opinions." *Izaak Walton League of Am. v. Marsh*, 655 F.2d 346, 372 (D.C. Cir. 1981).   Consequently, the fact that Plaintiff disagrees with the science used by the BLM is of no consequence, as the record clearly shows that the BLM's ROD is in conformance with the RMP.  Therefore, the BLM did not act arbitrarily or capriciously and violate FLPMA when issuing the ROD.

## CONCLUSION

For the foregoing reasons, the BLM did not act arbitrarily or capriciously in adopting the Atlantic Rim final EIS and ROD.  In accordance with FED. R. CIV.P. 56(c) this Court should grant Defendant-Intervenor State of Wyoming's Cross-Motion for Summary Judgment on all claims.

11

DATED the 31st day of July, 2008.


                                    DEFENDANT-INTERVENOR, STATE OF WYOMING


                                              /s/ David J. Willms
                                              David J. Willms
                                         Assistant Attorney General

                                              Jay A. Jerde
                                         Deputy Attorney General
                                    Wyoming Attorney General's Office
                                         123 Capitol Building
                                         Cheyenne, WY 82002
                                         (307) 777-6946
                                    (307) 777-3542 – Facsimile
                                         jjerde@state.wy.us
                                         dwillms@state.wy.us

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of July, 2008, the foregoing DEFENDANT-INTERVENOR STATE OF WYOMING'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGEMENT was electronically filed through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing, and the foregoing was also served by placing the same in the United States mail, postage prepaid, to the following:

Steven M. Kupka
Thomas R. Wilmoth
Donald G. Blankenau
Husch Blackwell Sanders LLP
206 South 13th Street, Suite 1400
Lincoln, NE 68508-2019
email: nancilee.holland@huschblackwell.com
email: tom.wilmoth@huschblackwell.com
email: don.blankenau@huschblackwell.com
*Counsel for Plaintiff*

Michael B. Wigmore
Sandra P. Franco
Bingham McCutchen LLP
2020 K Street, NW
Washington, D.C. 20006-1806
email: michael.wigmore@bingham.com
email: s.franco@bingham.com
*Counsel for Defendant-Intervenors Anadarko*
  *Petroleum Corporation*,
*Warren Resources, Inc*.,
*and Double Eagle Petroleum Co.*

Lori Caramanian
United States Department of Justice
Environment & Natural Resources Division
1961 Stout Street, 8th Floor
Denver, CO 80294
email: lori.caramanian@usdoj.gov
*Counsel for Federal Defendants*

Robert C. Mathes
Bjork Lindley Little PC
1600 Stout Street, Suite 1400
Denver, CO 80202
email: rmathes@bjorklindley.com
*Counsel for Defendant-Intervenor*
*Double Eagle Petroleum Co.*

  /s/ David J. Willms
Office of the Attorney General

13